## Corn Exchange National Bank and Trust Company *v.* Burkhart, Appellant.

536

Argued April 27, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and EAGEN, JJ.

*Clarence E. Davis,* with him *Davis and Davis,* for appellant.

*Morton Meyers,* with him *W. Louis Coppersmith,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, December 1, 1960:

The defendant appeals from a judgment for the plaintiff bank in the sum of $112,498.10 entered by the court below following a trial without a jury. The action was in assumpsit for the recovery of damages for the defendant's alleged breach of warranty of title as the lessor in two certain bailment leases which, simultaneously with their execution, were assigned by the defendant to the plaintiff bank.

The appellant's principal assignment of error is the trial court's rejection of the defendant's offer to prove that the bank knew at the time it took the lease assignments that the defendant was not the real owner of the machinery covered thereby, but that the lessee was, and that the fictional lessor-lessee relationship adopted for the transaction was at the instance of the bank in

order that it could discount the leases and thus receive a return on loans, which the bank was to make for the benefit of the actual owner (viz., the putative lessee of the machinery), which would be twice the legal interest rate that could be charged if the loans were made direct to the actual owner and secured directly by his chattel mortgage.

The complaint, which was filed in the court below on August 11, 1954, alleges that on May 11, 1948, the defendant Burkhart executed a bailment lease agreement with one Jesse M. Lingenfelter under which Burkhart leased to Lingenfelter four heavy mining shovels for a down payment of $24,600 and payment, thereafter, of monthly instalments of $6,866.67 each until the full purchase price of $65,800 was paid; that the $24,600 down payment stipulated by the lease was never paid to Burkhart by Lingenfelter; that by a writing of the same date Burkhart assigned the bailment lease to the bank for a consideration of $40,000; that the assignment contained an express warranty of title to the shovels in Burkhart; that Burkhart did not, in fact, have title to the shovels; that the bank purchased the bailment lease from Burkhart in good faith and without knowledge of any defect in Burkhart's title; that Lingenfelter, after making four monthly instalment payments, defaulted leaving a balance due of $13,733.32; that the bank repossessed two of the shovels from Lingenfelter and sold them for $4,000, crediting that amount to the balance owed by Lingenfelter under the lease; that the two remaining shovels were worth more than the balance owing on the lease but that the bank had been unable to obtain possession of them; and that the bank was therefore damaged in the amount of $9,733.32, owing by Lingenfelter under the lease, for which sum with interest the bank claimed of the defendant Burkhart.

The complaint further alleges that on August 17, 1948, the defendant Burkhart executed a second bailment lease agreement with Lingenfelter under which Burkhart leased to Lingenfelter three heavy mining shovels for a down payment of $9,500 and payment thereafter of monthly instalments of $10,300 each until the full purchase price of $71,300 was paid; that the $9,500 down payment stipulated by the lease was never paid to Burkhart by Lingenfelter; that by a writing of the same date Burkhart assigned the bailment lease to the bank for a consideration of $60,000; that the assignment contained an express warranty of title to the shovels in Burkhart; that Burkhart did not, in fact, have title to the shovels; that the bank purchased the bailment lease from Burkhart in good faith and without knowledge of any defect in Burkhart's title; that Lingenfelter defaulted and made no payments to the bank under the lease; that the shovels were worth more than $60,000 but that the bank had been unable to obtain possession of them; and that the bank had been damaged in the sum of $60,000, being the amount which it had paid for the bailment lease, for which sum, with interest, the bank claimed of the defendant Burkhart.

The defendant's answer admitted his execution of the bailment agreement with Lingenfelter on May 11, 1948, and his assignment of it on the same date to the plaintiff bank. The answer also admitted that Burkhart did not own the shovels described in the bailment lease and alleged that the lease was a fictitious arrangement in that Lingenfelter, the putative lessee, was and had been the actual owner of the shovels and that the plaintiff bank knew this all along. Burkhart further alleged that Lingenfelter had applied to the bank for a loan with the shovels as security; that Vincent E. Furey, a vice president of the bank, who acted

in the matter for and on behalf of the bank, had explained to Lingenfelter that the bank could not charge a high enough rate of interest if it made a loan directly to him secured by a chattel mortgage of the shovels; that Furey advised Lingenfelter to procure the signature of some dealer as the lessor in a bailment lease of the shovels so that the bank might thereby discount the leases and thus obtain a higher rate of interest on the money loaned; and that he (Burkhart) had executed the bailment lease as an accommodation for the bank and Lingenfelter without receiving any consideration therefor.

The answer likewise admitted that Burkhart did not own the shovels described in the bailment lease of August 17, 1948, and alleged that his signatures on the lease and the assignment were forgeries. At trial the defendant called the president of the local Cambria Finance Company, who testified that he had known Burkhart for 25 years and that, in his opinion, the questioned signatures were not Burkhart's, and also the cashier of the First National Bank of Ebensburg, who had 35 years of experience in the banking business and who testified that, in his opinion, the signatures were not Burkhart's. In refutation, the bank called a handwriting expert who testified that the signatures were Burkhart's. On this conflicting testimony, the trial judge, sitting as a jury, found that the signatures were genuine—a fact which is necessarily to be accepted on this appeal.

The vice president of the bank testified at trial that it was he who represented the bank in the transactions involved in this case. He also testified to a series of negotiations with Lingenfelter in respect of the bailment leases and the monies advanced by the bank on account of them and stated that he had never contacted nor met the defendant Burkhart.

The plaintiff introduced in evidence a promissory note dated May 11, 1948, signed by Lingenfelter and made payable to the order of Burkhart in the amount of $41,200 (being the amount of the purchase price of the first bailment lease less the specified down payment) to be paid in monthly instalments of $6,866.67. This note was attached to the May 11, 1948, bailment lease. The note contained an endorsement by Burkhart to the order of the plaintiff bank *without recourse.*

The plaintiff also introduced in evidence another promissory note dated August 17, 1948, signed by Lingenfelter and payable to the order of Burkhart in the amount of $61,800 (being the amount of the purchase price in the second bailment lease less the specified down payment) to be paid in monthly instalments of $10,300. This note was attached to the August 17, 1948, bailment lease and, likewise, contained an endorsement by Burkhart to the order of the plaintiff bank *without recourse.*

The plaintiff offered in evidence two cashier's checks payable by the plaintiff bank and drawn to the order of Burkhart, one in the sum of $40,000 and the other in the sum of $60,000. Vice president Furey testified that these checks were issued by the plaintiff bank in payment for the bailment leases which the bank purchased from Burkhart. On the back of each of these checks was an endorsement by Burkhart followed by an endorsement by Lingenfelter Motor Corp. On cross-examination Furey testified that he did not know to whom the $40,000 check had been delivered but that he personally delivered the $60,000 check to a Mr. Gorsuch, Lingenfelter's equipment manager, who contemporaneously gave Furey the August 17, 1948, bailment lease and attached note each being signed with Burkhart's name. At the time of the trial Gorsuch was dead and consequently not available as a witness.

542

At the conclusion of the plaintiff's case, the defendant called Lingenfelter as a witness and attempted to interrogate him concerning the negotiations he had with vice president Furey prior to the execution of the first lease. On objection by plaintiff's counsel, defendant's counsel made the following offer of proof: "We propose to prove by the witness that Mr. Furey, vice president of the Corn Exchange Bank, suggested to the witness that the loan be secured by a bailment lease rather than a chattel mortgage due to the fact that they could get a larger return on the money or a larger rate of interest on the money, and that Mr. Furey knew that the property was not actually owned by Mr. Burkhart and that his name was being used as an accommodation for the whole transaction between the plaintiff and the witness on the stand."

Plaintiff's counsel renewed his objection to the proffered testimony. The trial judge sustained the objection for the following assigned reasons: (1) the testimony would violate the parol evidence rule and (2) it would be irrelevant in any event, even if the bailment leases were executed pursuant to Furey's suggestion and he knew that they were fictitious when he accepted them on behalf of the plaintiff bank, since such knowledge on Furey's part would not be binding on the bank. In so ruling, the court below misinterpreted both the parol evidence rule and the law of agency. Whether the testimony would ultimately prove to be factually persuasive is a matter for the fact-finder to ponder and determine, but that it is admissible in the circumstances alleged there can be no doubt. Consequently, its exclusion by the trial court was harmful error.

It has, of course, long been established that, in the absence of fraud, accident or mistake, oral testimony of prior or contemporaneous statements cannot be in-

troduced to vary or contradict the terms of a written agreement. In this case, however, the defendant makes no attempt to vary or contradict the terms of the bailment leases. He does not dispute a single one of their terms. On the contrary, he freely concedes that among such terms is his express warranty of title to the machinery covered by the written agreements. What the defendant offered to prove is that what purported to be bailment leases were not such in reality; that the putative lessee in the leases, as fully known to the bank throughout, was actually the owner of the machinery without any property right whatsoever in the lessor and that the fictitious arrangement was adopted at the instance of Furey, the bank's vice president, in order that the bank might thereby exact a higher return upon the loans which, in truth, were sought by and intended for Lingenfelter.

The situation in *Smilow v. Dickerson*, 357 Pa. 455, 459-460, 54 A. 2d 883, is analogous to the present in principle and what was said there is peculiarly apposite here. In the *Smilow* case the lower court refused to enforce what purported to be a binding written contract because parol testimony disclosed that the contract was a "fictitious transaction. The parties signatory never intended the writing . . . to be in truth and in fact a binding contract between them." In affirming the ruling, we said, at pp. 461-462, "The parol evidence rule has no application where parol testimony reveals that the instrument never had any legal existence or binding force. The written instrument in the instant case is exactly what the parties intended it to be, and only that. No effort is made by parol testimony to vary or contradict its terms. In the leading English case of Pym v. Campbell, 6 El. & Bl. 370, it is said : 'The distinction in point of law is that evidence to vary the terms of an agreement in writing is not

admissible, but evidence to shew that there is not an agreement at all is admissible:' Rogers v. Hadley, 2 H. & C. 227, 249; Lister v. Smith, 3 Swabey & Tristram 282; Nichols v. Nichols, 2 Phillimore 180; Pattle v. Hornibrook, 1 Ch. 25; See also: Pollock on Contracts, 11th Ed. p. 202, and 1 Greenleaf Evidence, 305c, p. 439."

As support for the further ruling that knowledge of the bank's agent, vice president Furey, concerning the transaction could not be imputed to the bank, the court below relied upon the decision in *First National Bank of Hooversville v. Sagerson*, 283 Pa. 406, 129 Atl. 333. In that case judgment had been confessed against Sagerson and others on two judgment notes, payable to the plaintiff banks, and whereof he was a co-maker. On Sagerson's petition to open the judgment so far as he was concerned and to permit him to make a defense, the prayer of his petition was granted and a jury trial awarded, which resulted in verdicts in Sagerson's favor against the two bank plaintiffs, whereon judgments were entered. At the trial Sagerson was permitted to introduce testimony showing that the president of the payee banks told him, before he signed the notes, that the sole purpose of the notes was to deceive the bank examiner and that the banks would not hold him liable on the notes. On appeal by the plaintiffs this court reversed, holding that the testimony proffered by Sagerson was inadmissible on the ground that, when a party to a transaction acts in collusion with an officer of a bank, or knows or should know that the officer is acting beyond his authority and contrary to the best interests of the bank, the knowledge of the bank officer in such regard cannot be imputed to the bank.

In the instant case, however, it is Burkhart's contention that he did not know, nor should he have

known, that vice president Furey was acting outside of his authority or against the interest of the plaintiff bank. On the contrary, the proffered testimony was intended to show that the primary purpose of the fictitious bailment lease arrangement was for the benefit, and therefore in the interest, of the plaintiff bank. If such should be established, then the general rule applies that knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal.

In *Friend, Conservator v. Kuhn,* 316 Pa. 233, 175 Atl. 690, the defendant was sued upon a note which she, as executor of an estate, had given to the plaintiff bank. Her affidavit of defense alleged that she had executed the note at the bank's request, and solely for its accommodation, without receiving any consideration therefor, because an officer of the bank told her that the purpose of the note was merely to continue the claim of the bank against the estate as a current rather than as an overdue obligation of the estate and that the bank would not hold her personally liable upon it. The lower court discharged the plaintiff's rule for judgment for want of a sufficient affidavit of defense and the plaintiff appealed, contending that the defense thus interposed was unavailing because it was antagonistic to the parol evidence rule. In deciding that the affidavit of defense was sufficient, this court said, p. 236,—"Will the facts in the present affidavit of defense, if properly proved and believed, suffice to defeat plaintiff's claim? Clearly they will. Suppose that, at the trial, plaintiff proved them by a writing duly executed, or that plaintiff and the officer who alone acted for the bank at the time the paper sued on was given, agreed, and there was no countervailing evidence, that, at the time the endorsement was signed, and in order to induce defendant to execute it, the bank

officer expressly agreed that if plaintiff did so, it 'would not bind her individually nor would she be obliged to pay any money to the plaintiff by reason of its execution and endorsement'; and that, on the faith thereof, defendant signed the paper; would any one assert that, under such circumstances, she would nevertheless be held liable. Such a conclusion would be so far from the realms of justice as not to be thinkable, and so it was held in Newland v. Lehigh Valley R. R. Co., 315 Pa. 193; Martin v. Fridenberg, 169 Pa. 447; Clinch Valley Coal & Iron Co. v. Willing, 180 Pa. 165; Allinger v. Melvin, 315 Pa. 298, and the cases in their train."

If Burkhart can show, to the satisfaction of the fact-finder, that he did not receive any consideration for his part in the bailment lease transactions, that plaintiff bank knew that the discounted proceeds were an accommodation for another and that the fictitious lease arrangement was availed of for the bank's pecuniary benefit, then it would follow as a matter of law that Burkhart acted as an accommodation party *for the bank*. And, a want of consideration may be set up as a defense by an accommodation party to an instrument to an action on the instrument *by the party accommodated*. *Lackawanna Trust Co. v. Carlucci*, 264 Pa. 226, 107 Atl. 693.

The appellee bank stresses that the defendant's above-quoted offer of proof related only to the May 11, 1948, bailment lease. But, the defendant made the following further offer: "We further propose to prove by Mr. Lingenfelter, the witness, that prior to the execution of the lease dated August 17, 1948, Mr. Furey, in the presence of Mullican and another vice-president of the plaintiff corporation suggested to the witness that the transaction or the security for the loan of $60,000 be handled in the same manner as the loan

granted in May of 1948, the purpose of this offer being to show that the plaintiff in May of 1948 knew as a matter of fact that Burkhart did not hold any title whatsoever to the equipment described in the bailment lease."

The court sustained the plaintiff's objection to this offer of proof in the erroneous belief that Furey's knowledge, gained by him while acting for the bank with apparent authority in respect of the bailment lease purchase, could not be imputed to the plaintiff bank. Once the defendant's proffered evidence concerning the first lease was admitted, as it properly should have been, the testimony would also serve, by express reference to the prior transaction, as relevant substantive proof with respect to the plaintiff's effort to recover on the second lease. In *Morse Boulger Destructor Co. v. Arnoni,* 376 Pa. 57, 65, 101 A. 2d 705, we there recognized that, "The general rule is that evidence is admissible if it is competent for any purpose: Murray v. Frick et al., 277 Pa. 190, 121 A. 47. As a corollary of this rule, evidence may be considered for any purpose for which it is competent. The object of a trial is to ascertain the truth of the facts in issue. It would be entirely unrealistic and impractical to hold that evidence which is properly a part of the record can not be considered for all purposes for which it is evidentially competent."

The testimony offered by the defendant, which the trial court improperly excluded, may have shown that the first transaction was fictitious and that the plaintiff bank, acting through vice president Furey, was fully cognizant of that circumstance when Furey suggested that the second transaction be handled in the same manner as the first. From this evidence, if accredited by the fact-finder, it could reasonably be inferred that the plaintiff knew that the second bailment

lease was also a fictitious arrangement. Furthermore, had the excluded evidence been admitted, it might also have affected the court's approach to the conflict in the testimony of certain other witnesses as to the genuineness of Burkhart's signature on the second bailment lease and assignment thereof. The exclusion of the proffered testimony was reversible error as to both leases.

Since the case must go back for a new trial, we deem it advisable to offer some guidance to the court below on the issue of damages if the court should find the facts concerning the bailment lease transactions in favor of the plaintiff bank. The complaint and the testimony adduced by the plaintiff bank at trial indicate that it computes its damages on the mistaken assumption that the defendant was a guarantor of the promissory notes of Lingenfelter and the judgment entered below confirms that the trial court erroneously adopted that theory. Burkhart did not guarantee Lingenfelter's notes. The fact is that he assigned them to the plaintiff bank by his endorsement thereof *without recourse* and the bank so accepted them. The complaint alleges a cause of action for breach of warranty and nothing else. The unpaid balances due on Lingenfelter's notes which Burkhart assigned to the bank without recourse, have no bearing whatsoever on the quantum of the damages incident to Burkhart's breach of warranty of title to the leased mining machinery.

If the plaintiff is entitled to recover at all, the measure of its damages is only that which it lost as a result of defendant's non-ownership of the mining shovels covered by the bailment leases. Consequently, the plaintiff suffered no damage whatsoever by reason of any breach of warranty as to the two shovels which it repossessed out of the four covered by the first lease. The plaintiff may, therefore, claim damages only for

the value of the shovels which it can prove it was prevented from repossessing because of assertion by third parties of interests paramount to that which the plaintiff possessed by virtue of the bailment leases, and the value of such unrepossessed shovels is their value at the time that plaintiff's attempt to repossess them was frustrated.

Judgment reversed and a new trial ordered.

Mr. Justice BELL dissents.