## Ebelhare Estate

*S. Jonathan Emerson,* for Betty Ebelhare.
*William L. Cremers,* for executor.
*Lauralee F. Dambrink,* for G. Andrew and Jane S. Ebelhare.

WOOD, *J.,* April 14, 1986—We have now to respond to a petition filed on behalf of decedent's son and his wife, G. Andrew and Jane S. Ebelhare, objecting to the fact that the executor, Southeast National Bank, has included petitioners' noninterest-bearing promissory note in the face amount of $112,000 as an asset of decedent's estate. The note was executed in consideration of decedents' "sale" of his farm to petitioners on June 26, 1981. Petitioners contend that the transfer of the farm was intended to be a gift and that decedent intended to forgive payment on the note at the rate of $12,000 per year. The facts are virtually undisputed.

Petitioner G. Andrew Ebelhare is the son of decedent and his first wife Amanda, who died in April, 1980. Decedent subsequently married Betty Buchenhorst in November 1980, and executed his last will on December 12, 1980. Article Fourth of that will established a residuary trust on the following terms: the income was to be paid to his wife Betty during her life; at her death, one-third of the principal was to go to decedent's son Andrew, and the remaining two-thirds was to be placed in trust for decedent's grandchildren until they reach age 30. The noninterest-bearing note at issue here has been included by the executor as an asset of that trust.

The execution of the note was the result of decedent's attempt to minimize his death-tax liability. He wanted to give his son his farm, but only under the conditions that he and his wife would remain living at the farm the rest of their lives rent free, that there would be no gift taxes incurred, and that none of the credit available to offset gift and estate taxes would be consumed. Decedent therefore consulted his attorney William L. Cremers, Esq., in order to have the transfer of his farm structured in accordance with the above goals.

On the advice of Mr. Cremers, an agreement of sale was entered into between decedent and Andrew and Jane by which the farm and land was to be conveyed to them. In return, they were to give decedent a noninterest-bearing promissory note to be paid over a period of 10 years. The deed to the farm was delivered to Andrew and Jane, and in return they leased the premises back to decedent and Betty for the lifetime of the survivor at a flat rental of one dollar, all expenses to be paid by the lessees. All of these documents were executed on March 23, 1981.

There were some nuances to this transaction which deserve mention. The overall value of the farm was set at $130,000, but decedent gave a $6,000 interest in the farm to Andrew and Jane in 1980, and he also claimed a gift of an additional $12,000 to them at the time of the conveyance. The lease, deed, agreement of sale and promissory note were all executed by decedent and Betty on March 23, 1981, and were sent to Andrew and Jane in June of 1981. Decedent added a note to his son as follows:

"Promissory Judgment Memo which Bill Cremers wants for his record. The figure doesn't mean anything to you and me, but he will need them for gift-tax returns."

Thereafter, neither decedent nor his son and daughter-in-law did anything further with regard to the note; decedent did not press for payment, and Andrew and Jane made no payment. Based on all the evidence in the record, we specifically find as a fact that decedent never intended for Andrew and Jane to make payments on the note *and, more importantly,* that Andrew and Jane never intended to undertake an obligation to pay. Instead, the execution of the note was seen by decedent as a device to complete the scheme worked out on the advice of counsel, whereunder he would reduce his gift and death-taxes.

Andrew and Jane assert equitable grounds for not enforcing the note: they say they misunderstood the legal effect of the note, that the estate should be estopped from asserting the validity of the note, and that it is unjust to make them pay on the note while at the same time giving Betty the benefit of the one-dollar lease. We conclude as a matter of law that the note was a sham and was not intended to be enforced as between the parties.

Counsel have raised a number of issues and arguments in this matter, but in our judgment the crucial matter for decision is this: where parties to a written document prepare a document which does not reflect their true intentions, and (in this case) is intended only to avoid tax, should the court enforce the document, or should we instead honor what clearly appears to be the intention of the parties? There are a number of reasons for saying that we should enforce the document according to its terms, not the least of which (in our view) is the fact that we might otherwise be condoning an underpayment of tax to the federal government. However, we think that we have a way of dealing with that problem. In terms of the equities of the situation,

absent the tax considerations, it appears that if we *enforce* the note, Andrew and Jane will have to make payments that none of the parties to the note intended for them to make, and that the widow will have not only the right to live on the premises, virtually rent-free, but also the value of the premises.

Our research discloses two cases which address the issue which we have framed in the previous paragraph. The first of these, Lackawanna Trust Company v. Carlucci, 264 Pa. 226, 107 Atl. 693 (1919), is summarized in its syllabus as follows:

"In an action on a promissory note by a trust company, the holder, against the maker, an affidavit of defense is sufficient, which avers that defendant became maker of the note at the request and for the sole benefit of the plaintiff, and on reliance upon a contemporary parol promise by the plaintiff that the defendant would not be liable to it upon said note."

That case was cited with approval by the Supreme Court in Corn Exchange National Bank and Trust Company v. Burkhart, 401 Pa. 535, 165 A.2d 612 (1960), for the proposition that a want of consideration may be set up as a defense by an accommodating party to an instrument to an action on the instrument by the party accommodated, where the instrument does not in fact reflect the true intentions of the party. As we read both cases, they are saying that where the actual intentions of the party are at variance with the language and obligations set forth in the written instrument, the intentions rather than the language should be given effect. We will do so here.

We would be remiss in our duty if we permitted the matter to rest at this point, however. It has been our position as judge of the Orphans' Court of Chester County for the past six years that fiduciaries are, at least in part, agents acting on behalf of the court.

In that capacity, we think that we must instruct the executor in this case to notify the Internal Revenue Service of the conclusions which we have reached in this opinion, for whatever action the service wishes to take in light of our findings and conclusions.

## DECREE

And now, this April 14, 1986, for the foregoing reasons, we direct that the note from G. Andrew and Jane S. Ebelhare, executed in favor of George Ebelhare in the face amount of $112,000 be stricken from the estate inventory in the above-captioned matter, and declared to be null and void. We further direct the executor to report to the Internal Revenue Service concerning the findings and conclusions of the court in this matter, for whatever action the Internal Revenue Service may consider appropriate.