558 F.2d 711
 FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee,
v.
AMERICAN BANK TRUST SHARES, INC. (ABTS), et al., Appellees,
and
Sidney Robinson Bagby et al., Appellants,
and
Sadie G. Schein, Individually and suing on behalf of all
other capital note holders of American Bank &
Trust, Defendants.
 No. 76-1782.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 15, 1977.
Decided July 8, 1977.
 
 W. Eugene Rutledge, Birmingham, Ala. (Rutledge & Pruett, Birmingham, Ala., Pritchard, Myers, Morrison, Bloom & Rutledge, Charleston, S. C., Starnes, Starnes & Reddoch, Birmingham, Ala., on brief), for appellants.
 J. Randolph Pelzer, Charleston, S. C. (Sinkler, Gibbs & Simons, Charleston, S. C., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and COPENHAVER,* District Judge.
 WINTER, Circuit Judge:
 
 
 1
 Defendants, shareholders in American Bank Trust Shares, Inc. (ABTS), appeal from orders of the district court declaring, in relevant part, (1) that Federal Deposit Insurance Corporation (FDIC) is the sole owner of certain choses in action against the officers and directors of ABTS and its subsidiary, American Bank & Trust (Bank); (2) that FDIC may bring such causes of action to trial as soon as practicable; and (3) that defendants' counterclaim asserting fraud and wrongdoing by FDIC (among other allegations) be indefinitely stayed. The shareholders assert numerous errors by the district court in the final and interlocutory rulings.
 
 
 2
 We vacate the final judgment. We do not disagree with the district court's conclusion that FDIC has demonstrated apparent title to the choses in action, but we conclude that, before FDIC is permitted to exercise full ownership, the district court must hear and determine the issues raised in defendants' counterclaim pertaining to the method whereby FDIC acquired its apparent title. We therefore direct further proceedings in accordance with the views that we express.
 
 I.
 
 3
 ABTS is a South Carolina bank holding company whose stock is owned by members of the general public. ABTS, in turn, owns the stock of Bank, a South Carolina banking corporation having its principal office in Orangeburg, South Carolina. On September 20, 1974, Bank was closed by the South Carolina State Board of Bank Control (Board) because of its inability to meet the demands of depositors. On the same day, FDIC was appointed by the Board to act as receiver for Bank.[1]
 
 
 4
 To meet the demands of Bank's depositors, and to prevent the disruption of vital business, FDIC, as receiver took the following steps: FDIC sold certain assets of Bank to Southern Bank & Trust Co. (Southern) upon Southern's agreement to assume Bank's deposit liabilities and to reopen Bank's offices under Southern's name. FDIC sold the balance of Bank's assets to itself, in its general corporate capacity. These assets included "all contracts, rights, claims, demands, choses in action . . . whether known or unknown . . . including any claims against its directors, officers or employees arising out of . . . the nonperformance or manner of performance of their duties . . . ."[2] In return, FDIC, as a corporation, agreed to furnish cash needed to consummate the original transaction with Southern.[3] FDIC also agreed that if its recovery on the assets exceeded (a) the consideration paid for them; (b) the costs of collection; and (c) a profit of 61/2%, it would pay the excess to itself, as receiver, for the benefit of Bank's estate and those parties having claims against it. In accordance with South Carolina law, these sales were presented to and approved by a state court before consummation.[4]
 
 
 5
 FDIC, as a corporation, instituted the present action against ABTS, parent company of Bank. FDIC sought a declaratory judgment that it alone could assert all causes of action against the officers and directors of Bank founded upon acts of nonfeasance or malfeasance causing it harm. The complaint was later amended to include a similar claim of ownership covering choses in action against the officers and directors of ABTS.
 
 
 6
 At the same time this action was initiated, a shareholder of ABTS, on behalf of himself and all others similarly situated, brought a derivative action in state court against ABTS's directors.[5] The district court enjoined further state court proceedings and ordered that the state court plaintiffs be made parties-defendant in the federal action. However, the district court did allow "any . . . person, firm, or corporation, if so minded, to take whatever action they may deem appropriate in the state court for inquiring into the validity or propriety of the appointment of (FDIC) as Receiver of (Bank)." A second state court action, brought by another shareholder of ABTS, was voluntarily dismissed.[6]
 
 
 7
 Next, a group of ABTS shareholders filed a derivative action in the district court against various officers and directors of Bank and ABTS.[7] The district court stayed consideration of the claim, and also made these plaintiffs parties-defendant to the action filed by FDIC.[8]
 
 
 8
 After the various shareholders had been made parties-defendant in the instant case, they counterclaimed, alleging, inter alia, (1) that FDIC was improperly appointed receiver of Bank; (2) that South Carolina statutes allowing such an appointment were unconstitutional; (3) that FDIC was a principal wrongdoer in Bank's collapse; (4) that FDIC procured its appointment as receiver by fraud practiced upon the State Board of Bank Control; (5) that South Carolina statutes allowing the acquisition of Bank's assets by FDIC were unconstitutional; and (6) that FDIC procured approval of the sale by fraud practiced upon the state court. The counterclaim prayed that the appointment of FDIC as receiver be revoked and the sale of assets to FDIC be rescinded. These counterclaimants also asked that the State Board of Bank Control be enjoined from appointing any receiver for Bank.
 
 
 9
 Enroute to final judgment, the district court denied an application for a three-judge court to pass upon the validity of South Carolina statutes under attack. It also stayed consideration of the shareholders' counterclaim, and it limited discovery to matters "relevant to the issue of ownership of causes of action."
 
 
 10
 In the nature of final relief, the district court granted FDIC's motion for summary judgment, declaring that FDIC was the sole owner of all causes of action against officers, directors and employees of Bank and ABTS for harm done to Bank. FDIC was directed to initiate all proper causes of action as soon as reasonably practicable and the district court ordered that any such actions would be tried before consideration of the shareholders' counterclaim. The final judgment also denied a renewed motion by the shareholders for discovery as to "who owns what causes of action." It decreed that, except for claims based upon § 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78p(b), the shareholders were the owners of all causes of action based upon violations of the federal securities laws. The shareholders were prevented from immediately bringing these actions to trial, although they were allowed to initiate discovery.
 
 
 11
 The shareholders appeal, asserting various errors in these interlocutory and final rulings including the declaration that they did not own causes of action arising under § 16(b).
 
 II.
 
 12
 We see no error in the district court's determination that FDIC acquired apparent title to all choses in action against officers, directors and employees of Bank and ABTS for harm visited upon Bank (except, of course, for claims founded upon securities law violations other than claims based upon § 16(b)). FDIC acquired title by reason of its appointment as receiver of Bank and the subsequent sale of Bank's assets, with state court approval, by itself, as receiver, to itself, as a corporation. The only grounds upon which its title may be defeated are a successful attack upon the validity of its appointment as receiver, or upon the validity of its sale and purchase. Any such attack must be grounded primarily upon the South Carolina statutes allowing such appointment and sale.[9] Since there is no definitive state adjudication concerning the validity and application of the statutes, we can well appreciate the district court's reluctance to consider state law questions and its repeated invitation to have these issues resolved by a state tribunal.
 
 
 13
 But the fact remains that the parties have not initiated state litigation to resolve issues of state law and these issues have been raised in the district court by the counterclaim.[10] Until the counterclaim is adjudicated, it cannot be said with certainty that FDIC is the sole owner of the choses in action. The appointment and purchase agreement convey apparent title; but if defendants can prove the various allegations contained in the counterclaim (namely, that the appointment and purchase agreement were based upon fraud or other illegality under state law), FDIC will be divested of its apparent title. Accordingly, the district court was premature in directing FDIC to sue on its claims, except for the matter of filing suit to avoid any bar of limitations. FDIC should not have been allowed to proceed as far as trial.
 
 
 14
 We express no view on any of the allegations contained in the counterclaim, nor do we even pass on the question of whether the district court possesses or lacks jurisdiction to entertain them. All we decide is that these claims must be adjudicated before FDIC's potential suits are allowed to proceed to trial, and we see no basis on which the district court may permanently abstain from deciding them. Although there is little or no state authority bearing upon the South Carolina statutes in question, the statutes themselves are relatively clear, and the case does not appear to be of the type where a vaguely worded state statute may be authoritatively construed by a state court so as to obviate federal constitutional questions.[11] Moreover, the counterclaimants' assertions of fraud in FDIC's appointment as receiver and sale of Bank's assets do not raise questions as to which the doctrine of abstention would apply.
 
 
 15
 We do agree with the district court that it need not convene a three-judge panel to decide defendants' constitutional claims. The counterclaim does not seek to enjoin a state officer from enforcing a state statute;[12] the claim of unconstitutionality is made as a necessary step in a theory of private relief.
 
 III.
 
 16
 In the light of the foregoing, we conclude that the district court's several orders should be vacated and the cause remanded for further proceedings. On remand, the district court should treat as a settled fact FDIC's proof of its chain of title to the choses in action. The district court should then address the claims that there are infirmities in that title by reason of the invalidity of the state statutes under which FDIC acted, and fraud or other wrongdoing practiced by FDIC upon the State Board of Bank Control (which approved FDIC as receiver) or the state court (which approved FDIC's sale of Bank's assets). In this regard, the district court should treat as undecided by us, and therefore open to litigation before it, any claim by FDIC that any or all of the counterclaim allegations are not cognizable in the district court for lack of jurisdiction or from the application of res judicata or collateral estoppel.[13] The district court, before hearing the counterclaim on its merits, should reopen discovery on a reasonable basis to permit the parties to prepare themselves to litigate the questions that we direct to be heard. Until they are heard and decided, FDIC may not proceed to trial on the choses in action. The district court may also continue its stays of independent action by the shareholders. If necessary to avoid their being time-barred, the district court may allow FDIC to file suit on the choses in action.
 
 IV.
 
 17
 Finally, we agree with the district court that any causes of action under § 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78p(b), are not owned by the shareholders. Although actions under § 16(b) are not derivative actions for the purpose of Rule 23(b), F.R.Civ.P., Dottenheim v. Murchison, 227 F.2d 737 (5 Cir. 1955), cert. denied, 351 U.S. 919, 76 S.Ct. 712, 100 L.Ed. 1451 (1956), the statute provides that first opportunity to sue to recover insider's profits is given to the corporation. If the corporation declines to bring suit, a shareholder may sue in the corporation's name, and any recovery is for the benefit of the corporation. 15 U.S.C. § 78p(b); Smolowe v. Delendo Corp., 136 F.2d 231, 241 (2 Cir. 1943), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943).
 
 
 18
 In the instant case, all causes of action under § 16(b) are apparently vested in FDIC, by virtue of its appointment as receiver and subsequent acquisition of certain of Bank's assets. Even if the appointment or the acquisition is subsequently set aside (by resolution of the shareholders' counterclaim), ownership would then vest in Bank or a subsequent receiver and not the shareholders. The shareholders might assert such causes of action only if Bank or the subsequent receiver declines to do so, for the benefit of Bank or the receivership estate.
 
 
 19
 VACATED AND REMANDED.
 
 
 
 *
 United States District Judge for the Southern District of West Virginia, sitting by designation
 
 
 [1]
 The State Board of Bank Control is authorized to tender such an appointment under South Carolina law. S.C.Code § 8-273 (1962). FDIC is authorized to accept such an appointment under federal law. 12 U.S.C. § 1821(e)
 
 
 [2]
 If such a sale is authorized by state law and permitted by the appropriate state authority, FDIC is empowered by federal law to purchase assets from the receiver of an insured state bank, when such bank is closed on account of inability to meet the demands of its depositors. 12 U.S.C. § 1823(d)
 
 
 [3]
 The assets acquired by Southern did not equal (in value) the liabilities which it had assumed. FDIC, as receiver, promised to make up the difference in cash. FDIC, as a corporation, agreed, in return for the assets it acquired, to furnish the cash balance
 
 
 [4]
 In the Matter of Liquidation of American Bank & Trust, a South Carolina Bank (South Carolina Court of Common Pleas, Charleston County, September 20, 1974)
 
 
 [5]
 Taylor v. American Bank Trust Shares, Inc., et al., complaint filed in the South Carolina Court of Common Pleas, Richland County, and dated November 6, 1974
 
 
 [6]
 Grooms v. American Bank Trust Shares, Inc., et al., complaint filed in the South Carolina Court of Common Pleas, Richland County, on October 23, 1974. The complaint was dismissed on November 1, 1974
 
 
 [7]
 Bagby v. American Bank Trust Shares, Inc., et al., C.A. 75-104 (D.S.C.), complaint filed on March 10, 1975
 
 
 [8]
 Still other litigation, not relevant to this appeal, was instituted on March 21, 1975, in the Court of Common Pleas of Richland County, South Carolina, by Sadie G. Schein, a holder of Bank's subordinated capital notes, on behalf of herself and all other noteholders, against directors of Bank, alleging fraud and deceit in the sale of capital notes. The district court ordered these plaintiffs to be made parties-defendant in the pending case and enjoined further proceedings in the state court
 
 
 [9]
 S.C.Code §§ 8-273, 8-274, 8-276 (1962)
 
 
 [10]
 As set forth in the text, the counterclaim includes allegations that the state statutes authorizing FDIC's appointment and sale of assets are unconstitutional
 
 
 [11]
 Stated otherwise, we do not see the counterclaim as fitting within the traditional "abstention" doctrine originating with Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)
 
 
 [12]
 As required by the three-judge court statute applicable to this lawsuit, 28 U.S.C. § 2281 (repealed by Pub.L. 94-381, § 1, Aug. 12, 1976, 90 Stat. 1119)
 
 
 [13]
 FDIC contends, inter alia, that any objection to the sale should have been raised before the authorizing state court (and if no objections were raised, the matter is res judicata ). We do not pass on such a contention; we merely note that is an issue which the district court will have to address