**FEDERAL DEPOSIT INSURANCE CORP., Plaintiff,**

v.

**Roberto E. CABASSA and Carmen Sauri De Cabassa, Defendants.**

**Civ. No. 80–1405.**

United States District Court, D. Puerto Rico.

Nov. 10, 1980.

Feldstein, Gelpi, Hernández & Castillo, San Juan, P. R., for plaintiff.

Frank L. Skillern, Jr., Gen. Counsel, Myers N. Fisher, Asst. Gen. Counsel, Michael B. Burgee, Senior Counsel, Wayne D. Baller, Atty., Federal Deposit Ins. Corp., Washington, D. C., Cancio, Nadal & Rivera, San Juan, P. R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This matter is before the Court for disposition of defendants' motion to stay proceedings. A brief statement of the case will help in defining the question presented.

The action is brought by the Federal Deposit Insurance Corporation (FDIC) to recover the principal and accrued interest of fourteen promissory notes executed by the defendants, husband and wife.[1] Prior to March 31, 1978, the Banco Crédito y Ahorro Ponceño (Bank) was a banking institution organized and existing under the laws of the Commonwealth of Puerto Rico. On that date the Secretary of the Treasury of Puerto Rico (the Secretary) determined that the Bank was in unsound financial condition and insolvent. The Secretary took over the management and administration of the Bank and tendered to the FDIC the appointment as receiver of the Bank, in accordance with Article 30 of the Banking Law of Puerto Rico. P.R.Laws Ann., Title 7, Section 201. The FDIC accepted appointment as receiver of the Bank as tendered by the Secretary. Thereafter, the FDIC, in its corporate capacity, purchased from the receiver certain assets of the Bank, and alleges that the promissory notes comprising the claim in this action were among those assets. The defendants deny knowledge or information as to whether the notes were so acquired, but they do admit to having executed the fourteen promissory notes referred to in the amended complaint. They also deny the amount alleged for daily accrual of interest, and specifically aver that according to information provided to them the amount is $0.20 per day less than shown in the amended complaint.

The findings of the Secretary, as well as his actions, including the appointment of the FDIC, were approved by the Superior

---

1. Except as otherwise stated, the facts are taken from the averments of the amended complaint which have been admitted in the defendants' case.

Court of Puerto Rico.[2] That court also approved the acquisition by the FDIC in its corporate capacity of those assets of the Bank held by the receiver and not purchased by certain other banks. The procedure followed has been approved in other jurisdictions. *FDIC v. Ashley*, 585 F.2d 157 (6 Cir., 1978).

The motion under consideration is based on the fact that the former directors of the Bank filed an action in the Superior Court of Puerto Rico[3] in which they attack the legality and validity of the action taken by the Secretary. Defendants summarize their argument as follows:

"Since the determination of the legality, correctness, and validity of the appointment by the Secretary of the Treasury of the Commonwealth of Puerto Rico of the FDIC as receiver, and the legality, correctness, and validity of its sale and purchase to the FDIC as a corporate entity are actually subjudice (sic) and pending resolution before the Superior Court of Puerto Rico ... the interests of justice, of judicial economy, the convenience of the parties and the principle of comity ... (require that) ... a stay of proceedings be granted.

The power of this Court to grant a stay is admitted by FDIC and discussion of the numerous cases on which defendants rely to establish this proposition is unnecessary. The existence of the power, however, does not necessarily require its exercise. In *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153, cited by defendants here in support of their motion, the Supreme Court observed that " ... the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255, 57 S.Ct., at 166.

The most recent pronouncement on the subject by the Supreme Court is complicated by the fact that it involved a mandamus proceeding which the Court distinguished from an interlocutory appeal. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). The observation was pointedly made that "(w)here a matter is committed to the discretion of a district court, it cannot be said that a litigant's right to a particular result is 'clear and indisputable'," *id.* at 666, 98 S.Ct., at 2559, which is the standard for issuance of a writ of mandamus, *id.* at 662, 98 S.Ct., at 2557. The precise import of the *Will* case is further complicated by the opinion of Mr. Justice Blackmun that the "Court of Appeals should have done no more than require reconsideration of the case by Judge Will in light of *Colorado River* [*Water Conservation Dist. v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483]." *Id.* at 668, 98 S.Ct., at 2560. It was this concurring vote for reversal which determined the result. It is noteworthy that the only issue which could not be concurrently resolved by both the state and federal courts in *Will* was not stayed by the order entered. *Id.* at 666, 98 S.Ct., at 2559.

Both *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (194?); and *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), dealt with dismissals. Nevertheless, these cases were discussed in the *Will* case, which dealt with a stay order, without reference to this distinction. The guidance given by those cases is applicable here.

The first tenet of *Brillhart* is that "(g)ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." 316 U.S., at 495, 62 S.Ct., at 1176. No such interference

---

**2.** An untranslated and uncertified photocopy of the order entered in the San Juan Section on March 31, 1978, in Civil No. 78–2077 was appended as an exhibit to plaintiff's brief. Rule 6 of the Rules of this Court requires that all documents be translated and certified before filing. The authenticity of the document is not questioned and defendants have not objected to its filing. The filing is approved *nunc pro tunc*. Rules 901 and 1003 of the Federal Rules of Evidence. Requiring translation and certification will only effect delay.

**3.** Civil No. 78–2253 in the San Juan Section.

is here possible since the primary issues in this case are not present in the state court case. This determination also responds to the second instruction of *Brillhart* that "a district court ... should ascertain whether the questions in controversy between the parties to the federal suit ... can better be settled in the proceedings pending in the state court", 316 U.S., at 495, 62 S.Ct., at 1176. Here the state court proceedings involve issues and parties not present in the case before this Court. The specific factors listed by the Supreme Court in *Brillhart* do not require further investigation here due to the completely different nature of the two proceedings.

The *Colorado River* case gives even less support for a stay here. Abstention was held improper there although a direct clash between federal and state court rulings was possible. On the issue of wise judicial administration, the court there observed that "the circumstances permitting the dismissal of a federal suit due to the presence of concurrent state proceedings for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention.", 424 U.S., at 818, 96 S.Ct., at 1246.

The basis of defendants' motion here is really *FDIC v. American Bank*, 558 F.2d 711 (4 Cir., 1977), which they argue is directly in point. The procedural posture of that case was quite different since there were no state court proceedings pending to determine the validity of the FDIC's title to the choses in action and the attack was made by counterclaim in the federal court. The contest there was between claimants to the choses in action. It was in this context that the Court of Appeals there said:

"Accordingly, the district court was premature in directing FDIC to sue on its claims, except for the matter of filing suit to avoid any bar of limitations. FDIC should not have been allowed to proceed as far as trial."

558 F.2d at 715. There is a hiatus between the filing of the complaint and the trial to which *American Bank* is not addressed. This Court believes that wise judicial administration in the present case mandated more than the mere filing of a complaint. As the court in *American Bank* also pointed out, and true of the present case as well: "Even if the appointment or the acquisition is subsequently set aside (by resolution of the shareholders' counterclaim), ownership would then vest in Bank or a subsequent receiver and not the shareholders.", 558 F.2d, at 716. Here the parties seeking the stay are those allegedly liable on the choses in action, not adverse claimants, and these defendants would not acquire any title or right to the claim in question even if the FDIC were divested of same.

In their reply brief the defendants contend that the same issues are raised in this case and in the state court proceedings since they have challenged in their answer the validity and legality of the transactions by which the FDIC acquired the promissory notes on which this claim is based. They also admit that the transactions are presumptively valid, but contend that the presumption can be rebutted. There is more than a mere presumption here. There is an order of the Superior Court of Puerto Rico. While that order may not be binding upon this Court and the parties here, until otherwise modified, it is entitled to proper regard by this Court. *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886. The defendants have filed as an exhibit to their reply brief a copy of the amended petition in the Superior Court of Puerto Rico[4] which attacks the action taken in closing the Bank and the transfer of certain assets to the FDIC. The amended petition alone comprises 76 pages. The case has been pending in the Superior Court since 1978. This Court probably will not be called upon to decide the same questions in this case before the Superior Court rules.

4. The filing is approved *nunc pro tunc* in spite of failure to comply with Rule 6 of the Rules of this Court. See note 2, *supra*.

The situation presented here is quite different from that in *FDIC v. Barness*, 484 F.Supp. 1134 (E.D.Pa.,1980). By opening the judgment there Judge Becker permitted litigation of the proposed defenses raised by the maker of the note, an opportunity otherwise denied to the defendant by the judgment. Denial of the stay here accords defendants the same opportunity to establish such defenses as they have. In *Barness* the action in the federal court was not stayed although state court proceedings were then pending which would determine the "illegality defense". *Id.* at 1143. Unlike *Barness* the liability of the defendants on the notes in this case does not depend upon the legality of the acquisition by the FDIC since there is here no issue as to failure of consideration,[5] nor is there any suggestion that the Bank agreed not to enforce the notes against the defendant. The stay requested here will result in delay. During that delay the amount of the claim will continue to increase, and execution of a judgment may be made more difficult. This Court does not have a basis in the record for finding that there is a serious question of legality of the closing of the Bank and, therefore, this case is not an unusual one, as was *Barness*. 484 F.Supp., at 1153. It can be anticipated that many debtors of the Bank will seek to delay judgment by raising the illegality defense, particularly if stays are granted which cause delay, but do not saddle defendants with the additional burden of litigating that defense. On the other hand, resolution of the basic issue of liability on the notes, including the other defenses raised by defendants, may dispose of this litigation on other grounds, making the illegality defense academic.

Defendants' concern for possible duplicate liability is not shared by this Court. In the event the FDIC is eventually divested of title to this claim, it would revert to the Bank or a subsequent receiver, as noted above. Subsequent litigation of issues decided here might well be precluded by collateral estoppel. *Shore v. Parklane Hosiery Co.*, 565 F.2d 815 (2 Cir., 1977), cert. granted 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978). In any event, defendants may implead the FDIC in any subsequent action brought by the Bank or another receiver.

The balance of factors in the opinion of this Court weighs against granting a stay at this time. Defendants have not made out a clear case of hardship or inequity in being required to go forward, and a possibility of damage to the plaintiff is apparent. *Landis v. North American Co., supra.*

WHEREFORE, the motion is DENIED without prejudice to its renewal at a later time.

IT IS SO ORDERED.

---

5. Although the "causa" of the Civil Code of Puerto Rico has been translated as "consideration", 31 P.R.L.A. § 3431, its import may be more inclusive than the Common Law concept. 8 Manresa, *Código Civil Español*, 6th Ed., 1967, at 622.