Audrey Graybill, Dennis M. Spancake, Michael N. Wilson and Jane O. Zeigler *v.* Juniata County School District, Appellant.

Audrey Graybill, Dennis M. Spancake, Michael N. Wilson and Jane O. Zeigler, Appellants, *v.* Juniata County School District, Appellee.

Argued September 12, 1975, before President Judge BOWMAN and Judges KRAMER and MENCER, sitting as a panel of three.

*Stephen W. Beik,* with him *Miller, Kistler, Campbell, Mitinger & Beik,* for Juniata County School District.

*Gerald E. Ruth,* for Graybill, Spancake, Wilson and Zeigler.

OPINION BY PRESIDENT JUDGE BOWMAN, November 14, 1975:

This is an action in assumpsit to recover compensation allegedly due four professional employees under employment contracts with the Juniata County School District. They claim that for the years in question the school district paid salaries lower than mandated salaries under the Public School Code of 1949.[1] Upon the plaintiff's motion the court below granted summary judgment and awarded partial relief. Both the school district and the

---

1. Act of March 10, 1949, P. L. 30, *as amended,* 24 P. S. §1-101 et seq.

professional employees have appealed from the lower court's order.

The years here in question run from the school year when each of the professional employees, all teachers, first became employed with the school district through the 1972-1973 school year. Michael Wilson was first employed for the school year 1957-1958; Audrey Graybill for the school year 1960-1961; and both Dennis Spancake and Jane Zeigler for the year 1962-1963. Section 1142 of the Public School Code of 1949, 24 P. S. §11-1142, sets forth the minimum salary schedules for professional employees for these years in question. The dispute arises over the proper construction (and application to the contracts of these employees) of the amendatory Act of December 9, 1965, P. L. 1057 (Act 405), which provided that minimum salaries beginning in the school year 1965-1966 would be based upon a system of steps which an employee attained either by agreement with the school district or by the years of service contributed within the school district, whichever was higher. The same concept was carried over by still another amendment in the Act of June 12, 1968, P. L. 192 (Act 96). Initially, however, the defendent school district has raised the defenses of laches and statute of limitations as a bar to the suit. We may readily dispose of these defenses.

President Judge KUGLER ably discussed these issues below and properly concluded that neither of these defenses would apply in this case. First, laches is purely an equitable doctrine which cannot be asserted in an action at law. *North East Borough Appeal,* 191 Pa. Superior Ct. 532, 159 A.2d 528 (1960). The school district, however, calls our attention to Pa. R.C.P. No. 1030 which appears to provide that laches may be raised as a defense to actions in assumpsit. Rule 1030, however, merely enumerates the alternative defenses that may be raised in pleading new matter if available as a matter of substantive law to the cause of action asserted. The school district

cites some of those types of actions as controlling here. These, however, were clearly distinguished by the court below as being mandamus suits which are actions at law and are uniquely governed by equitable principles. *See Taggart v. Board of Directors of Cannon-McMillan Joint School System*, 409 Pa. 33, 185 A.2d 332 (1962). Inasmuch as this is a suit in assumpsit governed by principles in law rather than by principles in equity, laches is not a proper defense to this suit. *Bauer v. P. A. Cutri Company of Bradford, Inc.*, 434 Pa. 305, 253 A.2d 252 (1969).

The running of a statute of limitations is usually an available defense to an action in assumpsit, but in this action the court below having found that the contracts in question were executed under seal concluded that they were not subject to the six-year limitation usually applicable to such actions. Our review of the record leaves us with no doubt that the court below properly ruled upon this matter. In the first place the school district by failing to answer the plaintiffs' request for admissions conceded that the contracts executed by each of these employees was genuine. These contracts all contained the statement that "the parties above named have hereunto set their hands and seal" along with the word "seal" or "L. S." affixed next to or under the signatures. Clearly, unless adequately rebutted, the presence of these markings provides ample evidence that the contracts were executed under seal. *Koleff's Estate*, 340 Pa. 423, 16 A.2d 384 (1940) ; *Swaney v. Georges Township Road District*, 309 Pa. 385, 164 A. 336 (1932). Rather than offering a rebuttal, the school district admitted in its brief below "[t]hat the contracts, were, in fact, under seal and, therefore, the statute of limitations would not be applicable."

There remains the question of whether the court below properly ruled upon the merits of the case in granting summary judgment. The gravamen of the com-

plaint is that the plaintiff professional employees were not properly compensated on the basis of the minimum compensation schedule set forth in Act 405 for services rendered the school district from their original date of hire through and including the 1972-1973 school year. Act 405 clearly establishes an effective date of July 1, 1965 and does not provide for retroactivity. The plaintiffs' salaries prior to that time, therefore, were governed only by the salary schedules then in effect. For the school years 1957-1958 through 1962-1963 see the Act of June 1, 1956, P. L. 1948, (Act 656), and for the school years 1963-1964 and 1964-1965 see the Act of August 1, 1963, P. L. 466 (Act 247). Having examined all of the pleadings and evidence submitted by the plaintiffs, the court below properly concluded that each of the professional employees was paid in accordance with these schedules through the 1964-1965 school years.

In 1965 Act 405 established a new schedule under which minimum salaries and annual increments would be measured by "steps"; the steps representing progressive and maximum salary increments for each year of service rendered by a professional employee. Under this Act a professional employee with service prior to the 1965-1966 school year would initially be entitled to be placed on a step "which the professional employee has attained by agreement or by years of experience within the school district whichever is higher." The plaintiffs here have argued that on the basis of their initial employment agreement with the school district, they have attained placement on a higher step than would have been attained by years of experience. The school district, however, disputes the method by which the plaintiffs calculate their placement attained by agreement.

Under the original enactment the Public School Code of 1949 provided for minimum annual statutory salaries with minimum service increments to be granted to the professional employees for each year of service there-

after. Although the Public School Code of 1949, prior to the amending Act 405 did not adopt any concept of fixed steps, it is, in an operational sense, quite similar to the step system of Act 405. Both provide for mandatory minimum annual salaries and minimum annual service increments. Act 405 goes further and sets forth a table from which a step placement can be determined. In this case the school district hired each of the four professional employees on the basis of contracts providing salary levels which exceeded the then existing minimum salary level. The plaintiffs argue that by these contracts they are entitled to experience credits equivalent to the number of the then existing minimum annual increments by which their salaries exceeded the mandatory minimum starting salary. For example, when the minimum starting salary for the 1960-1961 school year was $3600 and the minimum annual service increment was $200, Audrey Graybill was hired at a starting salary of $4000 or the equivalent salary of a professional employee with two years experience. When combined with the five years of actual service for the school district before 1965-1966 Mrs. Graybill would have attained by agreement the equivalent of seven years of experience and would thereby be entitled to placement upon the eighth step of the salary schedule set forth in Act 405. On the same basis, Jane Zeigler would be entitled to placement upon a step halfway between eight and nine, Dennis Spancake on step twelve, and Michael Wilson on step eleven.

The school district argues that the plaintiffs are entitled to no greater placement by agreement than upon a step equivalent to the actual years of service rendered in the school district unless their salaries paid during the 1964-1965 school year combined with the minimum annual increment of $300 to which they were entitled would have corresponded to placement upon a higher step under Act 405. Under this approach, for example, by

the end of 1964-1965, Dennis Spancake, who was first hired for 1962-1963, had three years of service entitling him to placement on step four. His salary in 1964-1965, $5900, combined with his minimum annual increment of $300 entitled him to a 1965-1966 salary of $6200, and a corresponding placement slightly above step six of the salary schedule set forth in Act 405. The school district argues that this is the manner in which all of the plaintiffs' step placement attained by agreement should have been determined and was with minor variation the technique actually used to compensate these employees from 1965-1966 and thereafter.

These interpretations of Act 405 by the plaintiffs and the defendant school district are, in our candid view, both very plausible. We are guided, however, by the very fundamental principle of stare decisis and here we have precedent in support of the plaintiffs' position. In *Baldacchino v. Central Cambria School District,* the Superior Court *affirmed per curiam* at 218 Pa. Superior Ct. 752, 273 A.2d 549 (1971), an unreported decision and opinion of the Court of Common Pleas of Cambria County, Docket No. 987, 1969, filed April 24, 1970, which recognized the placement concept articulated by the plaintiffs. Similar positions have been taken in other unreported opinions of the various courts of common pleas and in the reported opinion of *Welsh v. Wilkes-Barre Board of Education,* 46 Pa. D.&C. 2d 61 (1968). It appears to us that these decisions have properly ascertained the intent of the legislature as it is revealed by its action in appropriating that year a sum of $34,000,000 to be paid to the school districts to relieve them of the increased burden. The defendant school district's suggested application of Act 405 would not have resulted in an increased burden other than that normally experienced from year to year. We, therefore, hold that the court below properly ruled that the plaintiffs in this suit were entitled to compensation on the

basis of placement on the step attained by granting them service credit equivalent to the increment level that they had received under their initial employment contract with the school district.

Lastly, the plaintiffs argue that the court below erred in awarding only simple interest rather than compounded interest on the unpaid compensation. The Public School Code of 1949 provides that "[i]n the event the payment of salaries of employes of any school district is not made when due, the school district shall be liable for the payment of same, together with interest at six percentum (6%) per annum from the due date. . . ." Section 1155 of the Public School Code of 1949, 24 P. S. §11-1155. It would appear, therefore, that it is within the discretion of the court below to award either simple interest or compounded interest pursuant to this section. We do not believe that Judge KUGLER here has abused his discretion in awarding only simple interest.

Accordingly, the court below is affirmed in both appeals.