## FEDERAL DEPOSIT INSURANCE CORPORATION

v.

### Herbert BARNESS.

Civ. A. No. 78–10.

United States District Court, E. D. Pennsylvania.

Jan. 31, 1980.

Arthur R. Littleton, Joseph H. Huston, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Arlen Specter, Bruce A. Cohen, Dechert, Price & Rhoads, Philadelphia, Pa., for defendant and applicants for intervention.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

### I. *Procedural History*

This case is before us on defendant's motion to open a judgment entered against him by confession in the Court of Common Pleas of Bucks County, and on the motion of Centennial Bank and Peter D. Carlino for leave to intervene as defendants. After the entry of judgment in state court, *Federal Deposit Insurance Corporation v. Barness*, No. 77–12385 (Bucks Co. Dec. 16, 1977), defendant removed to this court under 28 U.S.C. § 1441 by virtue of 12 U.S.C. § 1819(4), which provides that all civil suits to which the Federal Deposit Insurance Corporation ("FDIC") is a party shall be deemed to arise under the laws of the United States and are within the original jurisdiction of the United States District Courts. The procedural history of this and related cases is enormously involved. An understanding of the issues before us requires a threshold recitation of that procedural history.

FDIC's claim is based on a non-negotiable promissory note executed by defendant on April 28, 1975, to Centennial Bank ("Centennial") in the amount of $64,835, payable on demand ("the Barness note" or "the note"). The note includes a provision wherein the defendant authorizes the confession of judgment against him "with or without default." The note came into the possession of FDIC after the Department of Banking of the Commonwealth of Pennsylvania closed Centennial on October 20, 1976, and took possession of its business and property under 71 P.S. § 733–504 ("the takeover"). By operation of law, the Secretary of Banking, William E. Whitesell, ("the Secretary"), then became the receiver of Centennial. *Id.* § 733–601. On October 21, 1976, the Secretary executed documents entitled "Contract of Sale" and "Assignment" by which he sold or assigned certain assets to FDIC. The parties to the present action disagree on whether the note was conveyed in the Contract of Sale, but agree that it was included in the terms of the Assignment. The Contract of Sale was approved by the Court of Common Pleas of Philadelphia County on October 21, 1976. The approval has been affirmed by the Commonwealth Court under circumstances described below, and subject to a caveat which is of considerable import in this action.

After the entry of judgment in the Bucks County court and removal to this court, defendant filed the Motion to Open Judgment, verified by his affidavit. In it he stated that he has valid defenses to plaintiff's action on the note, as detailed in four separate counts in the motion. In his third count, defendant also alleged that he has a counterclaim which he would assert if the judgment were opened. FDIC thereupon moved to dismiss defendant's motion to open judgment, arguing that he had failed to state a legally sufficient basis for opening the judgment. By order of July 27, 1978, we denied the plaintiff's motion to dismiss, reserved decision on the defendant's motion to open judgment, and granted both parties leave to obtain discovery. In our letter to counsel, made an exhibit to that order, we looked to the Pennsylvania Rules of Civil Procedure to discover the standards by which to assess the validity of plaintiff's motion to dismiss defendant's motion to open judgment.[1] *See* Pa.R.Civ.P. 2959.

After our order of July 27, 1978, defendant embarked on extensive discovery. At the time fixed for filing his brief on the motion to open judgment, he filed instead a Motion for Partial Summary Judgment on the counterclaim asserted in count three of his motion to open judgment. We have determined that this motion for summary judgment is not properly before us at this time,[2] and have treated defendant's memorandum in support of his summary judgment motion as a memorandum in support of his motion to open judgment. As the plaintiff has responded with its memorandum, and both parties have filed

---

1. As we stated in our letter to counsel at that time, we read the Pennsylvania rule as setting a lower threshold than would apply to a motion to dismiss under F.R.Civ.P. 12(b)(6). As a result, we did not decide the specific issues of legal sufficiency raised by plaintiff's motion to dismiss, but deferred decision until after discovery could be undertaken by both parties. We have addressed all the issues raised on the motion to dismiss as part of our discussion in the present opinion.

2. We decline to entertain defendant's summary judgment motion on his counterclaim at this time for several reasons. First, we do not believe that the counterclaim is yet properly before us because we view the opening of the judgment as a necessary antecedent to the assertion of a counterclaim. Second, plaintiff has stated that it would wish to engage in discovery and augment the factual record before consideration of any summary judgment motion. Third, the issues and the evidentiary standard relevant to the summary judgment motion are very different from those relevant to the motion to open judgment, and the issues would in any event be confused rather than clarified if we were to consider both motions at the same time.

Plaintiff moved to strike defendant's motion for summary judgment as untimely. In turn, defendant moved to strike plaintiff's motion to strike for nonconformance with the Local Rules of Civil Procedure. Since we have determined not to consider the summary judgment motion until the motion to open judgment is decided, we will dismiss both motions to strike as moot.

supplemental memoranda, the motion to open judgment is now ripe for decision.

At oral argument on the motion to open judgment, certain questions were raised as to whether the defendant is entitled to assert as a defense to the note the illegality of the takeover by which the Secretary acquired the note, or whether that defense could be asserted only by Centennial, the original payee from whom the Secretary acquired the note. *See* n.9, *infra.* As a result of these questions, Centennial has moved for leave to intervene as a defendant. Moreover, Peter D. Carlino ("Carlino"), who was Chairman of the Board of Directors of Centennial on October 20, 1976, and is a major shareholder in Centennial, has moved for leave to intervene as representative of all shareholders of Centennial, in the event that we should determine that Centennial may not intervene because the Secretary, by reason of the takeover, has succeeded to all its legal claims and defenses.

In order to explain fully the issues before us, we must recite briefly the history of three other legal actions.[3] This case was assigned to our docket as a "related case" because the circumstances allegedly surrounding the making of the note were already before us in *Centennial Bank v. Hills,* Civil Action No. 76–2410 (E.D.Pa. filed July 30, 1976) [hereinafter cited as "*Hills*"]. *See* Local Rule of Civil Procedure 3(d). That action was brought by Centennial prior to the takeover to recover funds which Centennial alleged it had advanced for the construction of housing on premises known as Mount Carmel Gardens at 5700 Race Street, Philadelphia. The principal defendant was the Secretary of the United States Department of Housing and Urban Development ("HUD"). After the takeover, FDIC acquired Centennial's claim in *Hills* and as-

sumed control of the litigation. Defendant alleges in this action that his note was given in connection with the Mount Carmel Gardens financing. Specifically, he alleges that the note was given as an accommodation to Centennial and various parties involved in the building project, on the understanding that he would not be liable for payment on the note. Defendant also alleges that FDIC has failed to prosecute properly Centennial's claim in *Hills.*

The second lawsuit which is relevant to the issues before us is pending in the state courts in Pennsylvania. The early proceedings in that action are recounted in *Centennial Bank v. Whitesell,* 30 Pa.Cmwlth. 445, 375 A.2d 1333 (1977) [hereinafter cited as "*Whitesell*"].[4] On October 20, 1976, the day of the takeover, Centennial presented to Judge Rosenwald of the Court of Common Pleas of Philadelphia County a petition for review of the takeover. On October 21, 1976, Judge Rosenwald ruled that the Court of Common Pleas lacked jurisdiction over the subject matter of the petition for review, which he believed was within the exclusive jurisdiction of the Commonwealth Court. On the same day, Judge Rosenwald approved the sale by the Secretary, as Centennial's receiver, of the bank's assets and the transfer of its liabilities. Certain of Centennial's assets and liabilities were transferred to FDIC.

Centennial appealed Judge Rosenwald's jurisdictional ruling and his approval of the sale and transfer to the Commonwealth Court. That court held that the Court of Common Pleas did have jurisdiction over the petition for review, and remanded the action to the lower court for the purpose of conducting a proceeding under Section 605 of the Banking Code, 71 P.S. § 733–605. The Commonwealth Court dismissed Cen-

---

3. *Centennial Bank v. Hills,* Civil Action No. 76–2140 (E.D.Pa. filed July 30, 1976) [hereinafter cited as "*Hills*"].

 *Whitesell v. Centennial Bank,* No. 2479 (Common Pleas Phila. Co. Oct. 21, 1976), *rev'd in part,* 30 Pa.Cmwlth. 445, 375 A.2d 1333 (1977), *petitions for appeal denied,* No. 3107 (Pa.1978), *modified sub nom. Centennial Bank v. Commonwealth,* No. 1973 C.D.1976 (Pa.

Commw.Ct. July 6, 1979), *petition for appeal pending,* No. 4458 (Pa. filed July 27, 1979) [hereinafter cited as "*Whitesell*"].

 *Centennial Bank v. Lincoln Bank,* Civil Action No. 77–1872 (E.D.Pa. filed May 27, 1977) [hereinafter cited as "*Lincoln*"].

4. *See* complete citation, *supra* n.3.

tennial's appeal from the approval of sale of its assets and transfer of its liabilities. The appeal was dismissed purely on procedural grounds, however, and the Commonwealth Court expressly reserved to the Court of Common Pleas the power to set aside its approval:

> [W]e do not pass upon the merits nor shall this dismissal be considered as affecting or limiting the power and authority of the court below to afford such equitable relief as may be appropriate in the remand of proceedings [on the petition for review] and, if necessary, to set aside its approval of the sale and transfer of Centennial's assets and liabilities if the circumstances so require.

30 Pa.Cmwlth. at 460, 375 A.2d at 1339.

On remand, Centennial sought to enlarge the scope of the Section 605 proceeding. While the Court of Common Pleas granted Centennial's petition, the Commonwealth Court reversed and clarified its disposition of the prior appeal. It ordered that the proceedings on remand be limited to the issues cognizable under Section 605, but authorized a second hearing if the lower court should conclude that the takeover was illegal. The second hearing would be directed toward fashioning a remedy which would either restore the status quo of Centennial prior to the takeover, or else compensate Centennial's shareholders. The Commonwealth Court observed that a second hearing to fashion a remedy would be necessary

> because of the action . . . by the Secretary as statutory receiver of Centennial in seeking and receiving court approval of the sale of assets and transfer of liabilities of Centennial. Absent power and authority in the Secretary to issue notice of and to take possession of Centennial, he could not have become its statutory receiver and thus lacked authority to seek court approval of the sale and transfer of Centennial's assets and liabilities.

*Centennial Bank v. Commonwealth*, No. 1973 C.D.1976, slip op. at 3–4 (Pa. Commw.Ct. July 6, 1979). Centennial's petition for appeal from this decision of the Commonwealth Court is pending in the Pennsylvania Supreme Court. *Centennial Bank v. Commonwealth*, No. 4458 (Pa. Sup.Ct. filed July 27, 1979).

Thus, after more than three years, the state court action is nowhere near resolution. Centennial has not yet had the opportunity to have its charges against the Secretary and Department of Banking heard on the merits in the Court of Common Pleas. While the transfer of Centennial's assets and liabilities received judicial approval on October 21, 1976, the Commonwealth Court has ruled twice that the validity of that approval is contingent on the legality of the takeover, and the approval itself may eventually be set aside.

Centennial and its stockholders have also challenged the takeover in federal court, seeking damages in excess of one million dollars. *Centennial Bank v. Lincoln Bank*, Civil Action No. 77–1872 (E.D.Pa. filed May 27, 1977) (pending before Troutman, J.) [hereinafter cited as "*Lincoln*"]. Herbert Barness, the defendant here, and Peter D. Carlino, who seeks to intervene in this action, are plaintiffs in *Lincoln* as shareholders of Centennial. FDIC and the Secretary and the Pennsylvania Department of Banking are defendants in *Lincoln*. The various causes of action alleged in *Lincoln* are incorporated by reference in the third count of defendant's motion to open judgment in this action. Defendant thus argues here that because the takeover was illegal, the Secretary's acquisition of the note and his transfer of it to FDIC were illegal. The gravamen of his claim, as asserted here, is the violation of procedural statutes and regulations, both state and federal, and of constitutionally required due process, by the Pennsylvania Department of Banking and the FDIC acting in concert. These alleged violations are the basis of two counts of the complaint in *Lincoln*. FDIC and other defendants in *Lincoln* have filed a motion to dismiss the complaint which is awaiting decision.

■ Having reviewed the procedural history of this and related actions, we must turn to a more detailed analysis of the

parties' contentions. Before doing so, however, we must address a dispute over which legal standard we should apply to the motion to open judgment. Defendant argues that the Federal Rules of Civil Procedure govern procedure after removal in cases removed from state court, F.R.Civ.P. 81(c), and accordingly would have us apply the federal standards for relief from judgment, F.R.Civ.P. 60(b), although he concedes that we may look to the Pennsylvania Rules of Civil Procedure to guide our exercise of discretion under Rule 60(b).[5] Plaintiff argues that the Pennsylvania Rules are controlling since the federal rules have no procedure for opening a judgment entered by confession. We find it unnecessary to decide this issue, for we have determined that even if the Pennsylvania standard applies, as plaintiff argues, the judgment must be opened. *A fortiori*, if the federal standards, which the defendant prefers, were applicable, the judgment would still be opened.

■ The state rule for opening of judgments entered by confession is stated in Pa.R.Civ.P. 2959(e):

If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment.

Thus defendant must allege a meritorious defense to liability on the note, and must produce evidence sufficient to present a jury question and avoid a directed verdict. *First Pennsylvania Bank v. Weber*, 240 Pa. Super. 593, 360 A.2d 715 (1976). In the absence of a defense to the plaintiff's claim, a judgment may not be opened merely to permit the defendant to assert a counterclaim or set-off. *The Fidelity Bank v. Act of America, Inc.*, 258 Pa.Super. 261, 392 A.2d 784 (1978). As will appear, much of the dispute before us turns on whether defendant has asserted a defense, as opposed to a counterclaim or set-off. For the reasons stated below, we find that he has.

## II. The Contentions of the Parties

■ In explicating the contentions of the parties, we shall deal with counts one and four together, because they are closely related, and take them up first. We shall at the same time set forth the factual basis for these contentions, as they have been developed thus far and have been advanced to us. We note in this regard that the factual record on this motion consists of any of defendant's allegations which he has supported with evidence sufficient to avoid a directed verdict against him. As we have also noted, defendant's motion is verified, and no contrary evidence has been produced by plaintiff. In addition, defendant has produced voluminous evidence of procedural deficiencies related to the takeover, the bulk of which emanated from extensive depositions and document production; that evidence is relevant to count three of his motion. Consequently, the record consists of all the factual allegations of defendant's motion, and the evidence produced with respect to count three.[6]

---

5. Defendant cites *Girard Trust Bank v. Martin*, 557 F.2d 386 (3d Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 612, 54 L.Ed.2d 479 (1977) for the proposition that our decision should be governed by Rule 60(b). However, the issue in *Girard* was whether a petition to open or vacate a judgment entered by confession should be treated as a Rule 60(b) motion or as a Rule 8 pleading. Since the pertinence of the Pennsylvania Rules was not considered in *Girard*, the decision of the Third Circuit offers us no guidance. Both parties cite *Colonial Bank & Trust Co. v. Cahill*, 424 F.Supp. 1200 (N.D.Ill.1976), to support their respective positions on the applicability of the state rule to the opening of a judgment entered by confession in state court. Since the import of *Colonial* is unclear, we do not find it controlling.

6. At oral argument and in a recent memorandum, defendant has alleged a fifth defense to liability on the note. He alleges that the note was acquired by FDIC along with an accompanying letter of credit with which it is "inextricably linked," and that the acquisition was ultra vires because the Contract of Sale which Judge Rosenwald approved on October 21, 1976, specifically excludes standby letters of credit from the assets which may be acquired by FDIC. Reply Memorandum of Defendant Herbert Barness in Support of Defendant's Motion to Open Judgment 4–6 (filed Dec. 5, 1979). Plaintiff argues that this defense is wrong on the facts and was waived because Barness failed to plead it in his motion to open judgment. *See* Pa.R.Civ.P. 2959(c). We do not consider this defense at this time, as the record with respect to it is undeveloped. Except for

## A. Counts One and Four

In the first count, defendant alleges that the note was given as an accommodation to Centennial Bank and others in connection with the financing of Mount Carmel Gardens, that Centennial agreed at the time that it would not hold him liable on the note, and that FDIC is bound by that agreement between Centennial and defendant. In count four defendant alleges that there was no consideration for the note. These allegations are supported by his affidavit.

The underlying basis of defendant's position is that the note was given to Centennial in order to satisfy HUD's requirements for increasing the amount of HUD's mortgage guarantee on Mount Carmel Gardens to cover a letter of credit which Centennial issued to Associated East Mortgage Company, the direct lender for the Mount Carmel Gardens construction. The letter of credit was intended to cover cost overruns in the construction project. It was issued the same day as defendant's note to Centennial, and in the same amount. Defendant contends that he signed the note at the request of Centennial, a corporation in which he was a major shareholder, in order to promote Centennial's interests. HUD's refusal to approve the increased mortgage insurance which Centennial sought, despite the Barness note, precipitated the *Hills* litigation.

## B. Count Two

In the second count, defendant alleges that before the takeover, Centennial had worked out a proposed settlement in *Hills* which included the payment of $165,000 to Centennial and the release of defendant's obligation on the note. He alleges that FDIC abandoned the proposed settlement when it took control of the litigation, and failed to file an amended complaint in *Hills* which had already been prepared by Centennial's counsel and which joined an additional defendant. He alleges that FDIC has failed to prosecute properly the claims of Centennial in *Hills* and that if FDIC had properly prosecuted that action it would have received funds from the defendants in that action, which would have satisfied defendant's obligation at issue here. He also alleges that FDIC has made payments to unnamed third parties, for which it now seeks reimbursement from defendant in this action on defendant's note, and that if FDIC had properly prosecuted *Hills*, it would not have made the payments which it allegedly is now seeking to collect from defendant. These allegations are supported by defendant's affidavit.

## C. Count Three

In his third count, defendant alleges that FDIC acquired the note illegally. He alleges that the takeover was wrongful and that FDIC collaborated with the Pennsylvania Department of Banking in the illegal takeover. As we have previously stated, the third count incorporates by reference the complaint of Centennial and Barness in *Lincoln*. The defendant alleges several grounds on which he says the takeover was illegal: (1) the denial of procedural rights guaranteed by the due process clause and by the Federal Deposit Insurance Act, 12

---

the Assignment, the Contract of Sale, and Judge Rosenwald's order of October 21, 1976, we have been directed to no evidence relevant to these allegations. Nor do we consider plaintiff's contention that this defense was waived because it was not pleaded in the motion to open judgment.

At oral argument, defendant also reinstated his motion to vacate the judgment entered in Bucks County, which was set forth informally in his papers on plaintiff's motion to dismiss defendant's motion to open judgment, and was responded to by plaintiff at the time, but which we never decided. The basis of defendant's motion to vacate is that plaintiff's complaint for confession of judgment incorrectly recites that it was filed "in accordance with Rule 2971 of the Pennsylvania Rules of Civil Procedure." In fact, the complaint was filed in accordance with Rule 2951 of the Pennsylvania Rules of Civil Procedure. The mistake is plainly a typographical or clerical error, which is not a proper ground for vacating a judgment. *E. g., Cam Vending Service v. Kessler*, 204 Pa.Super. 400, 204 A.2d 490 (1964). We deem the complaint amended to correct this insignificant error, exercising our power under F.R.Civ.P. 60(a). *See United States v. Stuart*, 392 F.2d 60 (3d Cir. 1968). Accordingly, defendant's motion to vacate will be denied.

U.S.C. § 1811 et seq.; (2) the denial of equal protection of the laws; (3) violation of federal antitrust law; (4) violation of federal securities law; and (5) violation of the common law of Pennsylvania. In the voluminous memorandum he recently filed, defendant has set forth evidence tending to establish the denial to Centennial of its procedural rights under the due process clause and under state and federal procedural statutes and regulations. The allegations of count three are set forth both as a defense to liability on the note and as a proposed counterclaim. We refer to the defense alleged in count three of defendant's motion to open judgment as his "illegality defense."

The facts set forth in the memorandum may briefly be summarized as follows. Defendant contends that no hearing was held by the Pennsylvania Department of Banking prior to the takeover on October 20, 1976; that hearings held on December 1, 1975, and February 24, 1976, were tainted by, *inter alia*, the unconstitutional combination of prosecutorial and adjudicatory responsibility in the Department of Banking; and that the decision to take over Centennial was based on the Department's consideration of matters outside the record of the earlier hearings, denying Centennial the opportunity to be heard in opposition. Defendant contends further that prior to the takeover, FDIC and the Department of Banking had led Centennial to believe that if certain specific problems identified by FDIC were resolved, Centennial would no longer be in jeopardy; and that at the time of the takeover, the Department of Banking and the FDIC were in fact aware of steps which Centennial had taken and was taking to resolve the problems which had been identified, but refused to consider those steps, relying instead on *ex parte* evidence unfavorable to Centennial. He contends that no emergency existed in October, 1976, to justify the summary seizure of Centennial's business, and that post-seizure proceedings in the *Whitesell* action in the state courts have been plagued by such delay as to render them constitutionally inadequate to protect the interests of Cen-

tennial and its shareholders, citing *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979).

Additionally, defendant contends that the takeover was accomplished with the close collaboration of FDIC; that, contrary to its usual procedure, and at the request of the Secretary of Banking, the FDIC refrained from informing interested parties before the takeover, in order to prevent knowledge of the impending closing from reaching Centennial by indirect means; and that FDIC and the Department of Banking acted in conjunction to circumvent an FDIC hearing on the termination of FDIC insurance of Centennial accounts, which had been scheduled for October 26, 1976, by expediting the takeover so that it would occur before October 26. He contends that an FDIC attorney, Timothy S. Wahl, deliberately misled Centennial's attorney, Allan B. Schneirov, in telephone conversations on October 12 and 13, 1976, by representing that a Centennial merger proposal was under consideration, while, in fact, Wahl knew that the takeover was planned for the following week and the merger proposal was not being considered; and that Wahl subsequently ducked Schneirov's calls between October 14 and 19, 1976. Defendant contends that Frank T. Locki, the FDIC Regional Director, wrote a deliberately misleading letter to the Centennial Board of Directors on October 12, 1976. He argues that the actions of the FDIC constitute a violation of due process, and of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(a), and rise (or sink) to the level of actionable malfeasance in office.

### D. *FDIC's Reply*

FDIC attacks the defenses asserted in defendant's motion on two fundamental levels. First, it argues that the grounds asserted for opening the judgment are not supported by sufficient evidence to withstand a directed verdict, and thus fail to meet the Pennsylvania evidentiary threshold for motions to open judgment. Second, FDIC asserts that the grounds asserted do not constitute *defenses* to defendant's liabil-

ity on the note, as opposed to set-offs against it, or claims against Centennial's estate, which it maintains are not cognizable in these proceedings.

FDIC contends that defendant has produced no evidence with respect to counts one, two and four of his motion to open judgment. However, as defendant correctly responds, his motion is verified and therefore has the status of an affidavit.[6a] FDIC does not admit the defendant's contentions in his third count, but concedes for purposes of this motion that defendant has produced enough evidence of the illegality of the takeover to present a jury question, thereby meeting the Pennsylvania threshold.

FDIC urges that the defense alleged in count one is precluded by the parol evidence rule and by the Federal Deposit Insurance Act,[7] as it is premised on an alleged oral agreement. It argues that even if the oral agreement may be proved, defendant's alleged status as an accommodation party is no defense to his liability on the note to FDIC, but at best gives defendant a claim against the estate of Centennial. FDIC contends that the defense alleged in count four is barred by the Uniform Written Obligations Act as enacted in Pennsylvania,[8] and is inapplicable because the note is under seal.

FDIC argues that the second count of defendant's motion is at best a counterclaim, as it does not constitute a defense to the note. FDIC contends that the defendant may not question FDIC's discretion in prosecuting or failing to prosecute *Hills*, both because defendant lacks standing to assert Centennial's claim in *Hills*, and because FDIC is cloaked with the Secretary's discretionary powers under the Pennsylvania Banking Code, 71 P.S. § 733–701 et seq.

With respect to the third count, FDIC contends that the illegality of the takeover gives rise only to a counterclaim. More-

---

**6a.** FDIC argues that we should follow Pa.R. Civ.P. 209, as interpreted by the Pennsylvania courts. That rule provides that if a movant fails to take discovery to support his allegations, he is deemed to have admitted "all averments of fact responsive to the petition and properly pleaded in the answer." *See Arthurs Travel Center, Inc. v. Alten,* —— Pa.Super. ——, 408 A.2d 490 (1979). FDIC argues that *each issue* upon which defendant failed to take discovery must be concluded against him, even though he took extensive discovery with respect to count three. While we note that this is an extremely broad reading of Pa.R.Civ.P. 209, we need not interpret the rule, for it is inapplicable in the federal forum. Rule 209 is a procedural rule which is plainly inconsistent with federal practice; to our knowledge it has never been suggested that a federal litigant is deemed to have admitted the allegations of an adverse party if he fails to take discovery. Furthermore, defendant's counsel has represented to us that discovery was unnecessary to support counts one, two, and four of the motion to open judgment, since the evidence supporting those counts was already in his possession. On the basis of this representation, his selective use of discovery appears to have been entirely reasonable.

**7.** One section of the Federal Deposit Insurance Act provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e) (1970).

**8.** The Uniform Written Obligations Act provides, in pertinent part:

A written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound.

33 P.S. § 6. This statute was approved as a Uniform Act by the National Conference of Commissioners on Uniform State Laws and by the American Bar Association in 1925, and was enacted in Pennsylvania in 1927, but it has never been enacted in any other state. 9C Uniform Laws Annotated 377 (1957). Despite the intentions of its drafters, it is therefore a Uniform Act in name only.

over, FDIC argues, any claim or defense of illegality is available only to Centennial and not to defendant Barness, and therefore does not affect defendant's liability on the note. Finally, FDIC observes that the transfer of Centennial's assets, including the note, has been judicially approved by Judge Rosenwald under the circumstances we have described.

III. *Discussion*

 Our threshold task is to determine whether to use the Uniform Commercial Code or the common law of assignment in analyzing the issues in this case. We readily conclude that the common law of assignment must be applied, for Barness's note to the Centennial Bank is not a negotiable instrument.[9] Under Pennsylvania law, the confession of judgment provision, which permits judgment to be entered either before or after default, renders the note non-negotiable even though it is in form a demand note. *Cheltenham National Bank v. Snelling*, 230 Pa.Super. 498, 326 A.2d 557 (1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1955, 44 L.E.2d 453 (1975). Under Article 3 of the Uniform Commercial Code, an instrument which is otherwise negotiable is made non-negotiable by a term authorizing the confession of judgment before payment is due. 12A P.S. § 3–112(1)(d) & Comment 2. Since the note is non-negotiable, the substantive provisions of Article 3 are inapplicable and the rights of the parties are governed by common-law contract principles. *Id.* § 3–102(1)(e), § 3–805 Comment.

We turn now to a seriatim discussion of the counts of defendant's motion to open judgment, treating them in the same order as before, to assess whether any or all of them justify the opening of the judgment.

A. *Counts One and Four*

 Since we must apply the principles of the law of assignment, any defenses which would be available against Centenni-

---

**9.** We note that even if the note were negotiable, FDIC would not qualify as a holder in due course under the standards articulated in Article 3 of the Uniform Commercial Code, 12A P.S. § 3–302(1). First, FDIC is not a "holder" of the note, as that term is defined in *id.* § 1–201(20). *See* p. 1146, *infra.* Furthermore, a holder in due course must have taken the note without notice of any defense against it or claim to it on the part of any person. *Id.* § 3–302(1)(c). "Notice" is defined broadly in the UCC: "A person has 'notice' of a fact when . . . from all the facts and circumstances known to him at the time in question he has reason to know that it exists." *Id.* § 1–201(25). Defendant has produced sufficient evidence to make a threshold showing that FDIC knew of Centennial's objections to the Secretary's taking possession of the bank, since FDIC was represented by Timothy S. Wahl, Esquire, a staff attorney, at the hearings held before Judge Rosenwald on Centennial's petition to review the takeover on October 20 & 21, 1976. Defendant's Memorandum in Support of Motion for Partial Summary Judgment on His Counterclaim in Count Three of His Motion to Open Judgment 51, citing Exhibit 8 to the Pretrial Examination of William J. Beatty at 7–8.

Because it lacks holder-in-due-course status, FDIC's rights in the note would be subject to certain defenses, even if the note were negotiable. FDIC's claim on the note would be subject to "all defenses of any party which would be available in an action on a simple contract." 12A P.S. § 3–306(b). The defenses asserted in counts one and four, that Centennial agreed not to hold defendant liable on the note, and that there was no consideration for the note, would be available to defendant in an action brought by Centennial to enforce the note as a simple contract. Therefore those defenses would be available to the defendant against FDIC in this action, by virtue of § 3–306(b), even if the note were negotiable.

Moreover, the illegality defense would be available to Centennial, should we grant it leave to intervene, by virtue of *id.* § 3–306(d), which provides that "The claim of any third person to the instrument" is available as a defense if "the third person himself defends the action." The illegality defense is equivalent to a claim by Centennial that the note is properly payable only to it, and not to FDIC or to Centennial's receiver. If we were to grant Centennial and Carlino's motion for leave to intervene, the illegality defense could be asserted by Centennial on behalf of defendant, even if the note were negotiable. The UCC comment makes it clear that:

Nothing in this section is intended to prevent the [third-party] claimant [i. e. Centennial] from intervening in the holder's action against the obligor or defending the action for the latter, and asserting his claim in the course of such intervention or defense.

12A P.S. § 3–306 Comment 5. *See generally Chemical Bank of Rochester v. Ashenburg*, 94 Misc.2d 64, 405 N.Y.S.2d 175, 178–79 (Sup.Ct. 1978) (§ 3–306(d) intended to protect maker of note as much as holder of note).

al are available against FDIC, the assignee of Centennial's receiver. "[U]nder ordinary principles of contract law, the assignee of a non-negotiable instrument . . . takes subject to all defenses, set-offs and counter-claims that the obligor might assert against the assignor." *Stevwing v. Western Pennsylvania National Bank*, 468 Pa. 24, 30–31, 359 A.2d 793, 797 (1976). *See also* n.9, *supra.* The defenses asserted in counts one and four of defendant's motion would relieve defendant of liability to Centennial, if they are valid, and therefore they may be asserted against FDIC. We now discuss whether these defenses are precluded for other reasons.

#### 1. *The Parol Evidence Rule*

■ The parol evidence rule only applies to written agreements which are integrated. *Friestad v. Travelers Indemnity Co.*, ——— Pa.Super. ———, 393 A.2d 1212 (1978). The scope of application of the rule under Pennsylvania law is aptly stated in *Crompton-Richmond Co. v. Smith*, 253 F.Supp. 980, 983 (E.D.Pa.1966) (Luongo, J.), *aff'd*, 392 F.2d 577 (3d Cir. 1967):

> The rule applies if the writing is the entire agreement between the parties. Whether the writing is the entire agreement is a matter to be determined by the court, not by a jury. That determination must be made by examining the writing and comparing it with the alleged oral agreement. If the writing and the oral agreement relate to the same subject matter and if the court concludes that parties, situated as were the contracting parties, would normally have included both in the one agreement, then the subject of the alleged oral agreement must be considered as having been covered by the writing.

*See Bardwell v. The Willis Co.*, 375 Pa. 503, 506, 100 A.2d 102, 104 (1953); *Gianni v. Russell & Co.*, 281 Pa. 320, 323, 126 A. 791, 792 (1924); *LeDonne v. Kessler*, 256 Pa.Super. 280, 389 A.2d 1123 (1978). Moreover, the parol evidence rule is inapplicable if parol testimony reveals that the parties never intended the written instrument to have binding force. *Corn Exchange National Bank & Trust Co. v. Burkhart*, 401 Pa. 535, 165 A.2d 612, 616 (1960).

■ The written agreement involved in this action is a printed form of promissory note. The only additions to the printed form are the place and date of signing, the amount, the word "demand," and the signatures of defendant and a witness. The verified allegations of defendant's motion relate an oral agreement that defendant would sign the note to accommodate Centennial and third parties, and would not be held liable on it. We cannot conclude that parties situated as were Centennial and Barness would normally have included their agreement in the same writing with the form promissory note. Therefore the parol evidence rule is inapplicable.

Plaintiff relies on *Third National Bank & Trust Co. v. Rogers*, 330 Pa. 523, 198 A. 320 (1938), and *Commerce National Bank in Lake Worth v. Baron*, 336 F.Supp. 1125 (E.D.Pa.1971) (Lord, J.), in support of his parol evidence argument. While both those cases invoke the parol evidence rule, neither discusses the standard for determining whether the rule is applicable.

#### 2. *"Accommodation Party" Argument*

Plaintiff also argues that defendant's alleged status as an "accommodation party" does not constitute a defense to the note, citing *First Pennsylvania Bank v. Weber*, 240 Pa.Super. 593, 360 A.2d 715 (1976), and *Philadelphia Bond & Mortgage Co. v. Highland Crest Homes, Inc.*, 221 Pa.Super. 89, 288 A.2d 916 (1972). In those cases, the Superior Court of Pennsylvania stated that the holder of an instrument who has taken it for value has the rights of a holder in due course against an accommodation party who signed as maker. The precedents cited are inapposite here, for FDIC is not a *holder* of the note. "Holder" is defined as "a person who is in possession of . . . an instrument . . . drawn, issued or indorsed to him or to his order or to bearer or in blank," 12A P.S. § 1–201(20). The note is not drawn, issued, or indorsed in the manner required.

As *assignee* of the note, FDIC took it subject to any defenses which might be asserted against Centennial. *Stevwing v. Western Pennsylvania National Bank, supra.* Centennial's rights in the instrument are clearly subject to the defense that Centennial, as holder and payee of the note, "induced the maker to become an accommodation party, as by *actually agreeing* that he should not be held liable as a principal." *Weber, supra,* 240 Pa.Super. at 602, 360 A.2d at 720–21, quoting *Highland Crest, supra,* 221 Pa.Super. at 93, 288 A.2d 916 (emphasis in original). FDIC's rights in the note are subject to the same defense. *Stevwing, supra.*

### 3. *Federal Deposit Insurance Act*

A section of the Federal Deposit Insurance Act, 12 U.S.C. § 1823(e), provides that "No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it *under this section* . . . shall be valid against the [FDIC] unless such agreement . . . shall be in writing . . . ." *Id.* (emphasis added). We agree with defendant that plaintiff cannot invoke this section without showing that the note was in fact acquired under the provisions of § 1823. Since FDIC has produced no such evidence, it cannot claim the benefit of § 1823(e) on the present record.

We conclude then that the defense asserted in count one of the motion to open judgment is meritorious in that, if proved, it would defeat FDIC's claim on the note. Moreover, since defendant's allegations are verified and FDIC has produced no evidence to rebut those allegations, the defense in count one raises a jury question. Accordingly, defendant has met the evidentiary threshold under the Pennsylvania Rules of Civil Procedure, and is entitled to have the judgment opened. We turn next to FDIC's objections to the defense of "no consideration" raised in count four of defendant's motion to open judgment.

### 4. *Uniform Written Obligations Act*

Plaintiff contends that the defense of no consideration is precluded by the Uniform Written Obligations Act, 33 P.S. § 6, which provides that a signed promise is not invalid for lack of consideration "if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." *Id.* He contends that the words "the Undersigned . . . promises to pay to the order of Centennial Bank. . . ." are an "additional express statement" within the meaning of the statute.

In *Gershman v. Metropolitan Life Insurance Co.,* 405 Pa. 585, 176 A.2d 435 (1962) the Pennsylvania Supreme Court considered whether an agreement without legal consideration was nonetheless effective because it included the words "Approved by" followed by the obligor's signature. The Court gave short shrift to that argument:

> We merely say, in response to this argument, that we fail to see how the simple approval of the letter constituting the agreement can be considered as "an additional express statement * * * to be legally bound."

176 A.2d at 436–37. In *Fedun v. Mike's Cafe, Inc.,* 204 Pa.Super. 356, 364–65, 204 A.2d 776, 780–81 (1964), *aff'd,* 419 Pa. 607, 213 A.2d 638 (1965), the court ruled that the words "[w]e . . . release you . . . and will not hold you . . . ." did not constitute the additional express statement required by the Uniform Written Obligations Act. *Cf. Kay v. Kay,* 460 Pa. 680, 683 n.1, 334 A.2d 585, 586 n.1 (1975) (no consideration necessary for agreement containing words "Husband agrees to be legally bound . . . husband further agrees and legally binds himself . . . ."); *Thomas v. First National Bank of Scranton,* 376 Pa. 181, 183–84, 101 A.2d 910, 911 (1954) (no consideration necessary for agreement containing words "[t]he undersigned agrees to be legally bound hereby").

The note sued on, like the agreements before the Court in *Gershman* and *Fedun,* contains no "additional express statement." It contains only the bare

promise to pay money. That promise alone is not sufficient to bring it within the terms of the Uniform Written Obligations Act:

The purpose of this act, as declared by Professor Williston, who drafted it, was to make the law "substantially the same as it was when seals were in force, so far as the doctrine of consideration is concerned, except that in lieu of the formality of a seal, the formality of this statement is substituted". . . . The statement that the signer intends to be legally bound, in order to take the place of a seal, in a release or contract, as respects consideration, must be an additional express statement, to the effect that the signer intends to be legally bound. It is never to be inferred from circumstances.

*Taylor v. Philadelphia*, 126 Pa.Super. 196, 211–12, 190 A. 663, 669–70 (1937), *aff'd on opinion below*, 328 Pa. 383, 196 A. 64 (1938) (emphasis and citations omitted). Since the note contains no "additional express statement," the Uniform Written Obligations Act does not preclude the defense of no consideration.[10]

#### 5. *Adoption of the Seal*

The note contains the printed word "(Seal)" immediately to the right of the line on which the defendant placed his signature. FDIC contends that defendant thereby adopted the printed seal, making the note a sealed instrument, and that the absence of consideration is therefore no defense to defendant's liability.

■ Under Pennsylvania law, the adoption by an individual of a seal printed on a document which he signs is "largely a matter of intention." *Collins v. Tracy Grill & Bar Corp.*, 144 Pa.Super. 440, 443, 19 A.2d 617, 620 (1941). The presence of the printed word "(Seal)" opposite defendant's signature on the note gives rise only to a rebuttable presumption that defendant adopted the seal, thereby rendering the note a sealed instrument. *Swaney v. Georges Township Road District*, 309 Pa. 385, 164 A. 336 (1932); *Graybill v. Juniata County School District*, 21 Pa.Cmwlth. 630, 347 A.2d 524 (1975). Thus the note may not be a sealed instrument at all, since defendant may be able to prove that he did not adopt the printed seal. However, the defendant has not produced any evidence to rebut the presumption that he adopted the printed seal. On the present record, therefore, we must assume that he did adopt the seal.

■ The common-law effect of a seal on a written instrument was to foreclose the defense of "want" of consideration, but not of "failure" of consideration. *Poelcher v. Zink*, 375 Pa. 539, 101 A.2d 628 (1954); *In Re Conrad's Estate*, 333 Pa. 561, 3 A.2d 697 (1938). Failure of consideration means that exchange of a valuable consideration was intended, but was not received by the defendant; want of consideration means that no consideration was intended to pass. *In Re Levine's Estate*, 383 Pa. 354, 118 A.2d 741 (1955).

■ The common-law doctrine affording special status to a sealed instrument has long been in decline. Approximately half of the states, including New York, have enacted statutes making seals on written instruments wholly inoperative, thereby abolishing the common law doctrine. 1A A. Corbin, Corbin on Contracts § 254 (1963). *See, e. g.*, N.Y.Gen.Constr.Law § 44–a.[11] Several other states, including New Jersey, have limited the effect of a seal to the creation of a rebuttable presumption of consideration, permitting the "want" of consideration to be raised in defense to rebut the presumption. *Corbin, supra. See, e. g.*, 2A

---

**10.** Plaintiff relies on dictum in *Fasco, A.G. v. Modernage, Inc.*, 311 F.Supp. 161 (W.D.Pa. 1970), which construes the Uniform Written Obligations Act more broadly, following a 1947 decision of the Court of Common Pleas of Washington County. We must follow instead the more recent decisions of the Pennsylvania Supreme Court in *Gershman* and *Fedun*.

**11.** The New York statute provides:

Except as otherwise expressly provided by statute, the presence or absence of a seal upon a written instrument executed after August thirty-first, nineteen hundred forty-one shall be without legal effect.

N.Y.Gen.Constr.Law § 44–a.

N.J.S.A. § 82–3.[12] Pennsylvania has not abolished the common law of sealed instruments by statute, although the enactment of the Uniform Commercial Code made the law of sealed instruments inapplicable to contracts for the sales of goods, 12A P.S. § 2–203, and to negotiable instruments, *id.* § 3–113. *See also* 21 P.S. § 10 (deeds effective without seal).

■ The last decision of the Supreme Court of Pennsylvania which stated the common-law rule foreclosing the defense of want of consideration in an action on a sealed instrument was *In Re Brereton's Estate*, 388 Pa. 206, 130 A.2d 453 (1957). In a subsequent decision, *Selden v. Jackson*, 425 Pa. 618, 230 A.2d 197 (1967), the Court apparently stated a new rule. Affirming a judgment for the plaintiff on a note which was under seal, the Court stated:

> By placing the sealed note into evidence, Selden made out a prima facie case that consideration had moved from him to the maker for the amount involved. . . .
>
> Jackson could plead lack of consideration, and introduce evidence to support that assertion, but the burden of proof always remained with him to prove lack of consideration. He had to carry that burden up and over the formidable mountain of the presumption of consideration.

*Id.* at 619, 230 A.2d at 197–98. The plain import of this reasoning is that a seal creates only a rebuttable presumption of consideration, which may be overcome by proving a "lack" of consideration. The Court made no reference to the old distinction between "want" of consideration and "failure" of consideration. However, nothing in the Court's opinion suggests that it was departing from a settled rule of the law of sealed instruments, and the Court cited an earlier case which did make the distinction between "want" and "failure" of consideration. We have found no subsequent decision in any Pennsylvania court on the avail-

ability of the defense of want or failure of consideration in an action on a sealed instrument. Thus *Selden v. Jackson* is the most recent Pennsylvania decision on point.

■ Our task in construing and applying Pennsylvania law is to predict how the state courts would decide the issue if it were presented to them. *Becker v. Interstate Properties*, 569 F.2d 1203 (3d Cir. 1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In view of the absence of state court decisions on the pertinent question since *Selden v. Jackson, supra*, we find it difficult to predict whether the Pennsylvania Supreme Court sitting in 1980 would follow *Selden* to hold that a seal creates only a rebuttable presumption of consideration; or whether it would follow the older common law rule that a seal forecloses the defense of want of consideration, finding that rule unchanged by *Selden*; or whether, given its recent changes in personnel, the Court would attenuate the effect of the seal still further than in *Selden*. We find it unnecessary to resolve this question at the present time, for we have already determined that defendant's motion to open judgment must be granted on other grounds. We reserve our decision on this point of law until decision is necessary to adjudicate the rights of the parties to this action. Thus we refrain from deciding whether or not count four of defendant's motion to open judgment constitutes a valid defense to a note which we presume to be under seal.

### B. *Count Two*

The allegations of count two go in part to the motivation of FDIC for initiating this action on the note. *See* Motion to Open Judgment ¶¶ 19–20. Those allegations are obviously not a defense to liability on the note. However, defendant does allege in count two that a proposed settlement had

---

**12.** The New Jersey statute provides:

In any claim upon a sealed instrument, a party may plead and set up, in defense thereto, fraud in the consideration of the contract upon which recovery is sought, or want or failure of consideration, as if the instrument

were not sealed. In such cases the seal shall be only presumptive evidence of sufficient consideration, which presumption may be rebutted as if the instrument were not sealed. 2A N.J.S.A. § 82–3.

been negotiated in *Hills*, which would have resulted in the release of defendant's liability on the note, and that FDIC abandoned the proposed settlement when it assumed control of the litigation in *Hills*. Thus the second count offers as a defense allegations as to what Centennial *would have done* to release defendant from liability, if the takeover had not occurred.

If the takeover was legal, this defense will be of no avail, since Centennial was rightly deprived of control over the *Hills* litigation. If the takeover was illegal, FDIC's cause of action on the note is defeated anyway, without regard to the defense in the second count. Thus count two stands or falls with count three. However, if defendant can show that the takeover was illegal, proof that Centennial's conduct of the *Hills* litigation would have resulted in the release of defendant's obligation on the note will constitute an additional defense. Since plaintiff concedes for the purposes of this motion that defendant has made a sufficient showing of illegality in count three, the defense in count two is assertable to the extent that it concerns the release of defendant's liability on the note. As the allegations stated in count two are verified, the defense does not fail for lack of evidentiary support. It therefore constitutes an additional basis for opening the judgment.

### C. Count Three

■ The defense asserted in count three is the illegality of the takeover by which the Secretary became receiver of Centennial. The issue before us with respect to count three is whether the obligor on the note (Barness) may defend in a suit by the assignee (FDIC) of the receiver (Secretary) of the original obligee (Centennial) that the proceeding by which the receiver took possession of the assets of the original obligee was illegal.

■ In order for the assignee of contractual rights to maintain a cause of action, he must plead and prove the validity of his ownership of the claim.

When suit is brought against the defendant by a stranger to his contract, he is entitled to proof that the plaintiff is the owner of the claim against him. This protection must be afforded to the defendant. Otherwise, the defendant might find himself subjected to the same liability to the original owner of the cause of action, in the event that there was no actual assignment.

*Hillbrook Apartments, Inc. v. Nyce Crete Co.*, 237 Pa.Super. 565, 352 A.2d 148 (1975), *quoting Brown v. Esposito*, 157 Pa.Super. 147, 42 A.2d 93 (1945). *Accord*, 3 S. Williston, Treatise on the Law of Contracts § 432 at 194 (3d ed. 1960). *See* Gilmore, *The Assignee of Contract Rights and His Precarious Security*, 74 Yale L.J. 217, 227 (1964). This rule gains added force where the "original owner," here Centennial, allegedly has agreed not to enforce the note against the defendant. Accordingly, FDIC must show that its acquisition of the note was valid.

We do not view this principle as vitiated by the fact that FDIC's acquisition of the note occurred in two stages: the takeover of Centennial's assets by the Secretary and the subsequent sale or assignment of the note by the Secretary to FDIC. Consequently, Barness may defend by showing that the transfer of the note to the Secretary, which purportedly occurred by virtue of the takeover, was ineffective. While we have found no authority on the effectiveness of a receivership established contrary to law, the principles governing the effectiveness of *voluntary* transfers of contract rights are clear.

■ Pennsylvania law follows the Restatement of Contracts § 151 on the validity of assignments. *Wilcox v. Regester*, 417 Pa. 475, 480, 207 A.2d 817, 820 (1965); *Daino v. Atlantic Refining Co.*, 399 Pa. 606, 161 A.2d 42, 45 (1960); *Pennsylvania Co. v. Lebanon Building & Loan Ass'n*, 337 Pa. 316, 319 n.2, 10 A.2d 418, 419 n.2 (1940). The Restatement provides in pertinent part:

A right may be the subject of effective assignment unless . . . the assign-

ment is forbidden by statute or by the policy of the common law. . . .

Restatement of Contracts § 151(b) (1932). *Accord*, Restatement (Second) of Contracts § 149(2)(b) (Tent. Draft No. 3, 1967) ("A contractual right can be assigned unless . . . . the assignment is forbidden by statute or is otherwise against public policy"). It seems reasonable to construe the term "statute" in the foregoing rule to include constitutional provisions and to construe the term "forbidden" to include procedures in violation of the due process clause or procedural statutes, hence we do so. The rule concerning illegal assignments is the closest available analogy by which we may evaluate the illegality defense asserted here, and we adopt it. We hold that if the takeover was illegal, the transfer of the note from Centennial to the Secretary as Centennial's receiver was ineffective and void. Because the validity of the transfer of a non-negotiable contract right is part of the assignee's case, *Hillbrook Apartments, supra*, the invalidity of the transfer by reason of illegality is a defense.

Plaintiff argues that, under Pennsylvania law, evidence even of fraud in the procurement of an assignment is irrelevant and inadmissible in the assignee's action against the debtor, citing *Blanchard v. Commonwealth*, 6 Watts 309 (1837). *Blanchard* was an appeal from a decision of the orphans' court in an action brought by "The Commonwealth, in right of David Brooks and Hetty his wife, for the use of William Goodwin." *Id.* This locution meant that Goodwin was the assignee of David and Hetty Brooks. The defendant offered to prove that the assignment was procured by fraud. The Pennsylvania Supreme Court held, without any discussion, that "the evidence of fraud in procuring a transfer of the claim, was irrelevant and inadmissible." *Id.* at 312.

Although the Court did not explain its reasoning in *Blanchard*, the basis of the decision is clear from contemporary and subsequent cases. In *Montgomery v. Cook*, 6 Watts 238 (1837), an action was brought by "Thomas Cook and Sarah his wife, for

the use of Alexander M'Elroy." No evidence was produced to show "any right in Alexander M'Elroy," and the defendant argued that the plaintiff could not recover for that reason. The Court rejected this argument:

Cook and wife being still alive, the suit could only be maintained in their names; and notwithstanding it was stated on the record to have been brought for the use of Alexander M'Elroy, it is clear, that under the state of the pleadings in the cause, it was unnecessary to prove that he had any interest in, or claim to the subject matter in controversy. It was all sufficient to show that Cook and wife had a good cause of action, and that they were entitled to recover.

As the holding in *Montgomery v. Cook* indicates, an action brought in 1837 by an assignee could be maintained only in the name of his assignor, and only the right of the assignor to recover was at issue in the action. The holding in *Blanchard* is plainly a corollary of this rule: since the validity of the assignment is not an issue in the assignee's action against the debtor, evidence that the assignment was procured by fraud, or is invalid for any other reason, is irrelevant. The close relationship between the two 1837 cases was indicated in *Hamilton v. Brown*, 18 Pa. 87, 89 (1851):

[I]t is not even necessary that the assignee's name should appear in the proceedings; nor will the defendant be permitted to controvert the validity of the transfer: *Blanchard v. Commonwealth*, 6 Watts 309. An assignee need show no right in himself; it is enough if he show a right in the legal plaintiff, for it is this right alone that can be enforced: *Montgomery v. Cook*, 6 Watts 238. This is true of all assignments of choses in action. . . .

*See also Guaranty Trust & Safe Deposit Co. v. Powell*, 150 Pa. 16, 24 A. 345 (1892); *Citizen's Trust & Surety Co. v. Howell*, 19 Pa.Super. 255, 263 (1902).

■ The rule of *Montgomery v. Cook* is no longer the law of Pennsylvania. In 1939, Rule 2002 of the Pennsylvania Rules of Civil Procedure was promulgated: "Ex-

cept as otherwise provided . . . all actions shall be prosecuted by and in the name of the real party in interest . . ." This rule was intended primarily to permit an assignee to sue in his own name. 6 Goodrich-Amram 2d § 2002(a):1 (1977). The same rule has been adopted in other states and in the federal system, *see* F.R. Civ.P. 17(a). In applying Rule 2002, the Pennsylvania courts have consistently required assignees to trace in their complaints the derivation of their causes of action from their assignors. *E. g., Fourtees Co. v. Sterling Equipment Corp.*, 242 Pa.Super. 199, 363 A.2d 1229 (1976); *Hillbrook Apartments, Inc. v. Nyce Crete Co., supra*; *Produce Factors Corp. v. Brown*, 197 Pa.Super. 626, 179 A.2d 919 (1962); *Testa v. Lally*, 161 Pa.Super. 478, 55 A.2d 552 (1947); *Brown v. Esposito, supra*. "This is directly contrary to the prior practice under which only the interest of the legal plaintiff was pleaded or was in issue in the action." 6 Goodrich-Amram 2d § 2002(a):15 (1977). Although this requirement was prompted by the adoption of Rule 2002, we deem it a change in the substantive law, since the Pennsylvania courts have enlarged the elements of an assignee's cause of action.

Since the rule of *Montgomery v. Cook* is no longer followed by the courts of Pennsylvania, its corollary in *Blanchard* is no longer valid. The requirement that an assignee plead and prove the validity of his assignment necessarily gives the defendant an opportunity to show that the assignment is invalid and ineffective. As we have concluded, the illegality of the transfer of the note from Centennial to the Secretary, through whom FDIC possesses the note, if proved, would render that transfer ineffective and void.

Plaintiff argues that the illegality defense may not be asserted because the sale and transfer of Centennial's assets has already been judicially approved by Judge Rosenwald's order of October 21, 1976. However, the illegality defense is not an attack on the transfer of the note from the Secretary to FDIC. Instead, it is an attack on the prior transfer of the note from Cen-

tennial to the Secretary as receiver. The validity of that transfer depends on the legality *vel non* of the takeover, an issue which has never been adjudicated. Moreover, even the approval of the sale of assets to FDIC is in a procedural limbo, since the Commonwealth Court, in affirming the order approving the sale, expressly reserved to the lower court the authority to set aside that order if Centennial should prevail in the Section 605 proceeding on remand. Thus FDIC's argument premised on the October 21, 1976, order of the Court of Common Pleas is without merit.

The defendant's allegations concerning the circumstances and procedures surrounding the takeover and the assignment of the note to FDIC, as summarized above, *see* p. 1143, *supra*, raise a powerful (and damning) claim that Centennial was grievously wronged because it was precipitously closed without fidelity to required procedures. FDIC does not admit those allegations, but it does concede as it must that for purposes of this motion the allegations are supported sufficiently to satisfy the Pennsylvania evidentiary standard for a motion to open judgment. The allegations of count three are plainly sufficient to state a valid defense to the note and, on the present record, require the opening of the judgment.

Plaintiff argues that if we recognize the illegality defense here, its rights in all the assets transferred to it from the estates of banks which have been closed will be put in jeopardy. We view that argument as one *in terrorem*. We are confident that the occasions on which substantial doubts may be raised concerning the illegality of bank closings will be rare, and that few debtors will undertake the enormous expense (if this litigation is any example) of litigating spurious illegality defenses merely to evade their financial obligations. More likely, the effect of our decision will be to put FDIC on inquiry to determine before purchasing the assets of a closed bank that the closing complied with relevant law. We do not view this as an intolerable burden for a federal agency charged with broad respon-

sibilities in the field of banking, especially if the result is to ensure more careful compliance with relevant law by the agencies responsible for bank closings.

Moreover, we note that the illegality defense would not be available here if the legality of the takeover had ever been adjudicated in state court, and that we might view this case in a very different light if there were not evidence that FDIC had actual notice of Centennial's objections to the legality of the takeover.[13] Thus we view the present action as an unusual one, probably *sui generis*, in which there is a serious question of the legality of a bank closing, where the issue of legality *vel non* has never been adjudicated, and where the assignee of the note had actual notice of the bank's objections to the legality of the closing. In these circumstances, to disallow the illegality defense would be inequitable as well as inconsistent with the law of assignment, which governs here.

IV. *Centennial and Carlino's Motion For Leave to Intervene*

The motion to intervene recites that the interests of Centennial and Carlino may not be adequately represented if they are not permitted to intervene because, *inter alia*, defendant may not have standing to raise and litigate the illegality defense. Our ruling that he may assert that defense without the intervention of Centennial or Carlino materially changes the circumstances which existed when the motion for leave to intervene was filed. Accordingly, we reserve decision on that motion.